No. 89-239

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

COLES DEPARTMENT STORE,

        Plaintiff and Appellant,

-vs-

FIRST BANK (N.A.)-BILLINGS and
FIRST BANK SYSTEM, INC.,

        Defendants and Respondents.

---

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Robert Holmstrom, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        A. Clifford Edwards; Anderson, Edwards & Molloy,
        Billings, Montana

    For Respondent:

        Gerald B. Murphy and T. Thomas Singer; Moulton,
        Bellingham, Longo & Mather, Billings, Montana

---

Submitted on Briefs: Sept. 27, 1989

Decided: December 12, 1989

Clerk

Filed '89 DEC 12 AM 9 23
ED SMITH, CLERK
MONTANA SUPREME COURT

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Coles Department Store (Coles) appeals from summary judgment granted to defendants First Bank (N.A.)-Billings and First Bank System, Inc. The District Court for the Thirteenth Judicial District, Yellowstone County, ruled that Coles had failed to make a case that the defendants' actions, which Coles claimed led to the closing of the store, were wrongful under any theory pled. We affirm.

The issues are:

1. Did the District Court err in granting judgment to defendants on Coles' claim that defendants breached a fiduciary duty they owed to Coles?

2. Did the District Court err when it found that defendants' actions did not amount to actual or constructive fraud?

3. Did the District Court err in entering judgment in favor of defendants on Coles' claim of breach of the statutory obligation of good faith and fair dealing?

4. Did the District Court err in granting judgment in favor of defendants on Coles' claim of breach of the implied covenant of good faith and fair dealing?

Plaintiff Coles was a corporation owned by two brothers, Ron and Bruce Simon, and, before that, by their father. The corporation operated a retail clothing store in downtown Billings for approximately fifty years. During all that time, Coles banked with defendants or their predecessor.

For a number of years, Coles' account at defendant bank was handled by Tom Chakos, an old fraternity brother of Ron Simon. Coles' practice for some time had been to execute a separate ninety-day note each time it needed to finance operating expenses. Thus, it would often have several notes outstanding with defendants. In the fall of 1984, Chakos suggested that, instead, one

1

master note establishing a line of credit be used. Ron and Bruce Simon executed a $450,000 line of credit note with a due date of March 31, 1985. At the same time, the Simons had discussions with Chakos about the need to reduce the expenses of Coles. The store had lost money in six of the last eight years, losing in excess of $53,000 in fiscal year 1983 and $81,000 in fiscal year 1984.

In March or early April 1985, Ron Simon, who was on the Board of Directors of the defendant bank, learned that Chakos was being transferred to another bank and would no longer be handling Coles' credit. Ron Simon requested that Greg Lovell, a commercial loan officer, be assigned to the account.

Coles' financial report for the fiscal year ending January 1985 became available in March. It showed losses for that year in excess of $152,000, which reduced the shareholders' equity to $131,000. On April 9, 1985, Greg Lovell and Ron Simon met to discuss Coles' credit. The meeting lasted for several hours. Lovell advised Ron Simon that he did not feel that the bank would continue financing Coles beyond September of 1985 unless additional capital was invested in the corporation or additional collateral, including mortgages on Ron and Bruce Simon's homes, was provided. In spite of Ron Simon's insistence that the bank's valuation of the store's assets was too low and that the Simons were implementing steps to strengthen the store's financial position, Lovell also suggested that the best thing might be to liquidate Coles.

The day after the meeting, which he stated in a deposition left him "devastated," Ron Simon went on a scheduled buying trip to California. When he returned, Coles entered into a promissory note with defendants on a $360,000 line of credit due September 10, 1985. Coles also began liquidating its assets. By August, the defendants had been paid off and Coles' name, fixtures, inventory, and accounts had been sold.

This action was filed in July 1987. During discovery, the Simons learned of the existence of an "Action Plan," dated February 1985 and prepared by Tom Chakos. The "Action Plan" set out a time frame for the liquidation of Coles by September 1985. Coles has alleged breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, negligence, breach of the obligation of good faith under the Uniform Commercial Code, fraud and constructive fraud. Defendants each moved separately for summary judgment. After a hearing, the District Court granted both motions with an order and extensive memorandum.

I

Did the District Court err in granting judgment to defendants on Coles' claim that defendants breached a fiduciary duty they owed to Coles?

This Court has set forth the following standard which determines whether a fiduciary duty may be said to exist between a bank and its debtor:

> A fiduciary relationship exists between a bank and its debtor only if special circumstances indicate exclusive and repeated dealings with the Bank. Pulse v. North American Land Title Co. of Montana (1985), 218 Mont. 275, 707 P.2d 1105, 42 St.Rep. 1578. This Court has recently interpreted the Pulse case as requiring a bank to act as a financial advisor in some capacity, other than that common in the usual arms-length debtor/creditor relationship, in addition to requiring a long history of dealings with the bank, to establish a fiduciary relationship. Simmons v. Jenkins (Mont. 1988), 750 P.2d 1067, 1070, 45 St.Rep. 328, 331.

First Bank (N.A.) Billings v. Clark (Mont. 1989), 771 P.2d 84, 92, 45 St.Rep. 2294, 2302-03.

In the present case, the District Court conceded that there existed a long-term relationship between Coles and defendants. But it found no evidence that the bank acted as a financial advisor "in

3

some capacity other than that common to a usual arms-length debtor/creditor relationship." Coles argues on appeal that Tom Chakos acted as a financial advisor to the Simons when he suggested that Coles use one master note for its borrowing rather than a series of notes. Coles also points out that it was not represented by attorneys during Ron Simon's discussion with defendant bank regarding the operation of the store.

The depositions on file reveal that both Ron and Bruce Simon possess advanced degrees in management and business. The brothers had managed Coles well in excess of ten years. The depositions also indicate that, during that entire time, decisions about the financial management of Coles were theirs with nominal, if any, input from bank representatives. The only time the bank could be said to have stepped in on financial management of Coles is when it stated its intent to cut off Coles' credit. Even then, though, the timing and manner of liquidation of the store was controlled by the Simons, not by the bank. We conclude that the District Court did not err in granting judgment to defendants on the claim of breach of a fiduciary duty.

## II

Did the District Court err when it found that defendants' actions did not amount to actual or constructive fraud?

The nine elements of fraud are:

1. a representation;

2. its falsity;

3. its materiality;

4. the speaker's knowledge of its falsity or ignorance of its truth;

5. the speaker's intent that it should be relied upon;

4

6.    the hearer's ignorance of the falsity of the representation;

7.    the hearer's reliance upon the representation;

8.    the hearer's right to rely upon the representation; and

9.    consequent and proximate injury caused by reliance upon the representation.

McGregor v. Mommer (1986), 220 Mont. 98, 105, 714 P.2d 536, 540.

Coles claims that defendants' failure to disclose the "Action Plan" was fraudulent. But as defendants point out, the Simons were aware that their store was losing money and had talked to Tom Chakos about the need to cut costs. It would be poor banking practice if the bank had not been concerned about Coles' losses. As a member of the bank's Board of Directors, Ron Simon was aware of proper banking practice. The essential element of the "Action Plan"--that the bank no longer wished to extend credit to Coles without additional security--was disclosed to Ron Simon in the April 9, 1985, meeting with Greg Lovell. We conclude that there is no evidence of a false material representation relating to the alleged failure to disclose the "Action Plan."

Coles claims that Greg Lovell's statements at the April 9, 1985, meeting with Ron Simon were fraudulent. There were certainly representations made at that time, but Coles has produced nothing to indicate that Greg Lovell's representations about the bank's reluctance to continue financing Coles were false. Because the element "falsity of the representation" has not been shown, Coles has failed to show that Lovell's statements at that meeting were fraudulent.

Coles also asserts that defendants' failure to disclose the "Action Plan" to the Simon brothers constituted constructive fraud because of the special and fiduciary relationship between the

parties. As discussed under Issue I, Coles did not present adequate evidence to show a fiduciary relationship. We conclude that Coles has not shown a special relationship between the parties which would have required earlier disclosure of defendants' internal memorandum (the "Action Plan"). We hold that the bank had no duty to disclose to Coles any more any sooner than it did.

In sum, we conclude that the District Court did not err when it found that defendant's actions did not amount to actual or constructive fraud.

### III

Did the District Court err in entering judgment in favor of defendants on Coles' claim of breach of the statutory obligation of good faith and fair dealing?

The claim of breach of a statutory duty of good faith and fair dealing is made under § 30-1-203, MCA, which is part of the Uniform Commercial Code (UCC). That statute provides:

> **Obligation of good faith.** Every contract or duty within this code imposes an obligation of good faith in its performance or enforcement.

It is undisputed that Coles' promissory notes to defendants are controlled by the UCC.

The UCC defines good faith as "honesty in fact." Section 30-1-201(19), MCA. This Court has defined the obligation of good faith under the UCC as faithfully carrying out the terms of the agreement. Shiplet v. First Sec. Bank of Livingston (Mont. 1988), 762 P.2d 242, 246, 45 St.Rep. 1816, 1820.

Coles argues that defendants' failure to disclose the "Action Plan" breached the terms of defendants' agreements with Coles. However, the agreements between the parties which are covered by the UCC are the written promissory notes. There has been no allegation that defendants have failed to faithfully carry out the terms of those notes. That was the obligation of good faith under

6

the UCC. We conclude that the District Court did not err in entering judgment for defendants on Coles' claim of breach of the statutory obligation of good faith and fair dealing.

IV

Did the District Court err in granting judgment in favor of defendants on Coles' claim of breach of the implied covenant of good faith and fair dealing?

The District Court held that "the tort of breach of the implied covenant of good faith and fair dealing is related to an underlying breach of contract without which, it does not exist. . . . Here, the Court has determined that the covenant did not exist because there was no breach of an underlying contract." This Court has held that where the relationship between the parties is entirely contractual, there must be an initial finding of breach of contract before a claim of breach of the covenant of good faith and fair dealing may be considered. Montana Bank of Circle v. Meyers & Son (Mont. 1989), 769 P.2d 1208, 1214, 46 St.Rep. 324, 330-31; Nordlund v. School Dist. No. 14 (1987), 227 Mont. 402, 406, 738 P.2d 1299, 1302. Coles, however, argues that in this case the existence of the tort is an independent factual question which does not require an initial claim of breach of contract, so that summary judgment on this issue was improper.

A breach of the implied covenant of good faith and fair dealing requires the breaching party to arbitrarily or capriciously engage in an impermissible activity. Blome v. First Nat. Bank of Miles City (Mont. 1989), 776 P.2d 525, 529, 46 St.Rep. 1186, 1191. The nature and extent of the covenant is "measured in a particular contract by the justifiable expectations of the parties." Nicholson v. United Pacific Ins. Co. (1985), 219 Mont. 32, 41-42, 710 P.2d 1342, 1348.

The Simon brothers were well aware of the declining financial position of Coles, and in fact had discussed the need to make changes with Tom Chakos prior to February of 1985. We conclude that they had no justifiable expectation that defendants would continue to loan money to Coles indefinitely. Nor has Coles shown that defendants acted arbitrarily or capriciously. The development of the "Action Plan" was nothing less than prudent banking policy in light of the accelerating financial deterioration of the borrower over a period of several years. Moreover, defendants gave notice to Coles almost six months in advance of the date they intended to stop extending credit to the store. In the absence of a claim of breach of contract we conclude that no claim of breach of the implied covenant of good faith and fair dealing lies.

The closing of Coles was undoubtedly a blow to the Simons and to downtown Billings. However, we agree with the District Court that Coles has not presented a case under which defendants may be held responsible for that event. We therefore affirm the summary judgment for defendants.

_____
Chief Justice

We concur:

_____

_____

_____
Justices

Justice William E. Hunt, Sr., dissenting:

I dissent. The District Court incorrectly concluded that a breach of the implied covenant of good faith and fair dealing depends on the existence of an underlying breach of contract. This is not so. The existence of the tort of bad faith is a question separate and independent from the question of breach of contract. As this Court pointed out in Nicholson v. United Pacific Insurance Co. (1985), 219 Mont. 32, 41-42, 710 P.2d 1342, 1348:

> But whether performing or breaching, each party has a justifiable expectation that the other will act as a reasonable person. [Citation omitted.] The nature and extent of an implied covenant of good faith and fair dealing is measured in a particular contract by the justifiable expectations of the parties. Where one party acts arbitrarily, capriciously or unreasonably, that conduct exceeds the justifiable expectations of the second party. The second party then should be compensated for damages resulting from the others culpable conduct.

In Shiplet v. First Sec. Bank (Mont. 1988), 762 P.2d 242, 246, 45 St.Rep. 1816, 1821, we reaffirmed this rule, noting that a breach of contract is not a prerequisite to a breach of the covenant of good faith and fair dealing.

While the existence of a _duty_ to act in good faith is a question of law which may be determined by a district court on summary judgment, the existence of a _breach_ of the duty is a question of fact and is not properly decided on summary judgment. Simmons v. Jenkins (Mont. 1988), 750 P.2d 1067, 1071, 45 St.Rep. 328, 332. In this case, defendants had an obligation to act reasonably and in good faith to its longstanding customer, Coles Department Store. Material

questions of fact indicate that this duty may have been breached. Summary judgment was improper.

I would reverse the District Court.

_William E. Hunter_
Justice