NO. 93-080

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

STANLEY J. KONDELIK and
ELIZABETH A. KONDELIK,
husband and wife,

      Plaintiffs and Appellants,

  -v-

FIRST FIDELITY BANK OF GLENDIVE,
MONTANA,

      Defendant and Respondent.

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Seventh Judicial District,
              In and for the County of Dawson,
              The Honorable Richard G. Phillips, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

        Arnie A. Hove, Circle, Montana

        For Respondent:

        Richard A. Simonton, Simonton, Howe & Schneider,
        Glendive, Montana

Submitted on Briefs:  May 13, 1993

Decided:  July 28, 1993

Filed:

_____
           Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal by plaintiffs Stanley J. and Elizabeth Kondelik from an order of the District Court of the Seventh Judicial District, Dawson County, granting defendant's motion for summary judgment in part and dismissing in part without prejudice. We affirm in part and reverse in part.

The issues for review are restated as follows:

1.  Did the District Court err in granting summary judgment in favor of defendants on plaintiffs' claim for breach of fiduciary duty?

2.  Did the District Court err in determining that claims for misuse and misappropriation of corporate funds cannot be brought by plaintiffs individually?

3.  Did the District Court err in dismissing plaintiffs' claims of fraud and negligent misrepresentation because they were premature?

Plaintiffs allege tortious conduct on the part of the First Fidelity Bank of Glendive (Bank) concerning Kondelik Ranch, Inc. (the Corporation), a Montana farm and ranch corporation which incorporated in 1968. Stanley J. Kondelik (Stanley) and his brother, Emil J. Kondelik (Emil), were the sole shareholders in 1991 when they agreed to divide the land and other corporate assets based upon Stanley's ownership of 47% of the shares in the Corporation and Emil's ownership of 53% of the shares. Their plan was also to divide the liabilities in the same proportion. This division of liabilities proved to be unsuccessful.

2

In 1990, the Corporation's officers were Stanley, Emil and Emil's wife, Evelyn Kondelik (Evelyn). Stanley was president of the Corporation from April 1990, after the death of his father, until February 1992, when he resigned that office. Stanley's wife, Elizabeth, was not a shareholder or officer. Prior to October 1988 when Stanley and Elizabeth (the plaintiffs) were married, Elizabeth had no association with Kondelik Ranch, Inc.

Stanley and Emil both testified by deposition that they had differed over certain ranch matters as early as 1987, but that it was not until after the marriage of the plaintiffs in October 1988 that Stanley questioned the conduct of other officers of the Corporation. No split of the Corporation was pursued prior to 1990, however, because the brothers did not want to upset their father, Emil Kondelik, Sr., who lived until January 1990.

At the time of Stanley and Elizabeth's marriage in October 1988, the Corporation had two delinquent loans with the Bank which had recently been guaranteed by Farmers Home Administration (FmHA). The Bank had required the FmHA guarantees as a condition for continuing to carry the Corporation's real estate and equipment loans. One of these loans was in the principal amount of $112,000 and secured by a security agreement, a real estate mortgage and two brand mortgages (the equipment loan): the other loan, with a principal amount of $288,000, was secured by a real estate mortgage (the real estate loan).

In addition, the Bank made operating loans over a period of years to the Corporation. When the Corporation was unable to pay current operating loans, the Bank carried them over to the next

3

year. On December 7, 1989, the carryover operating debt was $220,965.03. The Corporation renewed this debt and included the 1989 operating debt in a new note for $250,000 executed in December 1989 (the operating loan). Emil, Evelyn, Stanley and Elizabeth all signed personal guarantees for this amount. Although Elizabeth has never been a shareholder, officer or director of the Corporation, the Bank required her signature on the operating loan. This operating loan represented several years of operating expenses which the Corporation was unable to pay the Bank because of drought and other conditions beyond its control.

In 1991, the Kondeliks separated the Corporation's assets and liabilities according to the pro rata shares of stock owned by Emil and Stanley and began operating the ranch as two units. When the Bank split the operating loan, plaintiffs were required to sign personal guarantees on new loans representing both couples' shares of the $250,000 operating loan. Thus, plaintiffs remain obligated as guarantors on Emil and Evelyn's share of the operating loan. The operating loan is not guaranteed by FmHA. Since May 1991, the Bank has provided separate current operating loans to Stanley and Elizabeth as individuals.

Stanley has signed personal guarantees for over $600,000 of Corporation debt. In addition to the guarantees for the operating loan discussed above, Stanley has signed personal guarantees for 100% of the equipment and real estate loans. As far as the real estate and equipment loans are concerned, the Bank has merely accommodated the Kondeliks by allowing them to make separate payments based on stock ownership; it has not actually split the

4

responsibility for the loans.  The couples have split all other assets and liabilities on a **47%/53%** basis and have operated separately since May or June of 1991.

Stanley and Elizabeth testified in their depositions that they wanted to separate the ranching operations because they believed that Emil and Evelyn were misusing and misappropriating Corporation funds.  Evelyn was secretary-treasurer of the Corporation and handled its bookkeeping matters. At a shareholder meeting in 1989, Evelyn admitted using corporate operating funds inappropriately and agreed to stop this practice.  Plaintiffs also testified in their depositions that when Evelyn's inappropriate spending continued, they advised Perry 0. King (King) of their concerns regarding Evelyn's conduct.  King was an agricultural loan officer, **vice**-president and employee of the Bank.  He was in charge of servicing the Corporation's loans at the time plaintiffs advised him of Evelyn's conduct.  Plaintiffs contend that King agreed to monitor the Corporation operating account for inappropriate advances and withdrawals of operating funds by Evelyn.

Plaintiffs have further testified that in February 1991, the Bank agreed to split the Corporation's debt if the shareholders reached an agreement concerning the misappropriated funds.  The Kondeliks reached an agreement in May 1991.  Pursuant to this agreement, Emil and Evelyn agreed to pay Stanley $30,000 in exchange for his release of all claims against them relating to misuse and misappropriation of corporate funds. Plaintiffs claim the Bank pressured them into signing this agreement before their accountant's review was final by refusing to give them a loan for

5

current operating expenses prior to reaching an agreement and settlement.

After the Kondeliks settled the matter, the Bank prepared separate notes to refinance the operating loan. Plaintiffs signed a note individually for 47% of this debt with the Bank. They also signed personal guarantees for Emil and Evelyn's share of the operating loan. Emil and Evelyn's share of the operating loan remains in the name of Kondelik Ranch, Inc. and Emil and Evelyn continue to operate their share of the ranch as the corporate entity. In addition to the operating loan, which is not FmHA guaranteed, Stanley remains responsible for 100% of the FmHA-guaranteed equipment and real estate loans.

Plaintiffs testified by deposition that King told them he would handle the split of the debt and, specifically, that he would arrange to have the equipment and real estate loans separated by FmHA to reflect the Kondeliks' split of land and equipment so that each couple would be responsible only for their share of the total debt. King testified that he agreed to work with the Kondeliks--in his capacity as a loan officer servicing their accounts--in order to effectuate the split of the Corporation. King did try to achieve this separation with FmHA for the Kondeliks but the first request was denied by FmHA.

Stanley, Emil and Evelyn remain obligated on the entire corporate debt which totals over $600,000. Elizabeth remains obligated on $250,000 in corporate operating loan debt. Stanley and Elizabeth, who now operate their share of the ranch as

individuals, have pledged personal collateral to the Bank for these debts.

On March 17, 1992, after learning that Emil and Evelyn were late on their payments to the Bank, plaintiffs filed a complaint against the Bank charging two counts of malice, and one count each of breach of fiduciary duties, negligent misrepresentation and fraud. They requested actual and punitive damages and specific performance of the Bank's alleged agreement to split the loans. The District Court granted summary judgment in favor of the Bank on plaintiffs' claims for malice and breach of fiduciary duties and dismissed without prejudice the claims of fraud and misrepresentation. Additional facts are provided throughout this opinion as necessary.

I.

Did the District Court err in granting summary judgment in favor of the Bank on plaintiffs' claim for breach of fiduciary duties?

The plaintiffs contend that when the Kondeliks requested a split of the Corporation's assets and liabilities, the Bank agreed to do so subject to certain conditions. They claim that the Kondeliks met these conditions, but the Bank did not split the debt as agreed. The Bank's failure to split the Corporation's debt is the primary issue here. Stanley and Elizabeth contend that a fiduciary relationship existed between them and the Bank. The District Court determined that no fiduciary duty was owed by the Bank to either Stanley or Elizabeth.

7

Plaintiffs contend that King acted in a fiduciary relationship with them regarding the split of the Corporation. They further contend that the Bank owed Elizabeth a separate duty to monitor for misuse and misappropriation of operating funds. According to the plaintiffs, King assured them that he would obtain separate loan guarantees if they reached an agreement with Emil and Evelyn concerning the misuse and misappropriation of corporate funds.

Plaintiffs claimthatthey contacted King regarding the misuse and misappropriation of Corporation funds, that they provided evidence of the same and that King assured them that the Bank would monitor the operating loans. Plaintiffs further contend that the misuse and misappropriation continued and that no monitoring was done.

The plaintiffs also argue that the District Court disregarded the fact that Elizabeth was never a shareholder, officer or director of the Corporation. In addition, the plaintiffs have presented other facts which they contend are relevant to the issue of whether a fiduciary relationship existed here between the Bank and themselves.

As previously stated, FmHA rejected the split of the real estate and equipment loans. The FmHA guarantees were obtained at the urging of the Bank in lieu of other remedies when the Corporation was having difficulty meeting its obligations. In 1987, the Bank had required the Corporation to obtain FmHA guarantees on the Corporation's existing real estate and equipment loans as a condition for carrying these loans. Acting on behalf of the Corporation, King obtained the first FmHA guarantees in 1987.

8

Plaintiffs contend that King was acting or agreed to act in a fiduciary relationship in 1991 when he assured them that the Bank would again handle the FmHA paperwork to obtain separate guarantees for split loans. According to the plaintiffs, King further assured them in May of 1991 that he would obtain separate loan guarantees if they agreed on a split of the ranch and if Stanley and Elizabeth would release their claims of misuse and misappropriation against Emil and Evelyn.

In the order granting summary judgment to the Bank on this issue, the District Court stated:

> All of the material contacts, conversations, ranch visits, etcetera [sic], had to do with the corporation's farming activity and its operating loan not with any individual loan that the Plaintiffs may have had.

Further, the court stated that if a fiduciary relationship existed, it was with the Corporation and not with Stanley and Elizabeth as individuals.

Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. The standard that an appellate court applies in reviewing the grant or denial of a motion for summary judgment is the same as that used by the trial court. Musselman v. Mountain W. Farm Bureau (1992), 251 Mont. 262, 824 P.2d 271, 273. The party moving for summary judgment is entitled to judgment on the law applicable to the facts established by the pleadings, depositions, answers to interrogatories and admissions in the record. Musselman, 824 P.2d at 274.

Plaintiffs contend that the Bank owed fiduciary duties to them personally in addition to **any** fiduciary duty owed to the Corporation.  Because Stanley and Elizabeth are not similarly situated, we will address their claims separately.

Stanley claims the Bank owed him a fiduciary duty because he transacted ranch business with the Bank individually as well as through the corporate entity.  Stanley was a shareholder, guarantor and officer of the Corporation before, during and after the split of assets and liabilities.  Montana law provides that a shareholder who guarantees corporate loans may recover individual damages from the lender only where a separate duty exists apart from that owed by the lender to the corporation.  Walstad v. Nor-west Bank of Great Falls **(1989),** 240 Mont. 322, 327, 783 **P.2d** 1325, 1328.  In our most recent opinion addressing the rights of shareholders to sue on their own behalf, we stated:

> Montana law is clear that the stockholders and guarantors of a corporation do not have the right to pursue an action on their own behalf when the cause of action accrues to the corporation.  Bottrell v. American Bank **(1989),** 237 Mont. 1, **26-27,** 773 **P.2d** 694, **708-10;** Walstad, 783 **P.2d** at 1328; Moats Trucking Co., Inc. v. **Gallatin** Dairies, Inc. **(1988),** 231 Mont. 474, 477, 753 **P.2d** 883, 885.  Here, [the corporation] borrowed operating funds from the Bank: the Swensons as individuals did not borrow operating funds but had borrowed from the Bank to purchase a truck.  Nor did the Swensons as individuals request a loan related to the auger rig since it was refinanced in 1984. The corporate entity . . . was requesting an advance for operating funds under its promissory note. . . . The Bank properly exercised its contractual right and refused this requested advance.  The District Court correctly concluded that the Swensons as individuals are precluded from asserting any cause of action arising from this refusal by the Bank to continue financing [the corporation].

10

Richland Nat'l Bank & Trust v. Swenson (1991), 249 Mont. 410, 424, 816 P.2d 1045, 1054.

Stanley's argument that he can sue the Bank individually because he and Elizabeth now operate as a sole proprietorship and because the Bank has been dealing with him in both the corporate capacity and personally is the same argument made by the bank customers in <u>Swenson.</u> This argument did not stand up there and is similarly flawed here. Stanley was a shareholder and officer of Kondelik Ranch, Inc. before, during and after the split. He continued to hold the office of president of the Corporation until February 1992. Similarly, the fact that the Bank allowed Stanley to term out 47% of the corporate operating lona, which was not subject to FmHA guarantees, created no separate duty owed by the Bank to Stanley regarding the FmHA-guaranteed loans.

Any causes of action relating to the split accrue to the Corporation, and cannot be prosecuted by Stanley as a shareholder and guarantor merely because he also transacted business with the Bank individually. Like the shareholders in <u>Swenson,</u> Stanley has failed to establish that the Bank owed him a separate duty here. We conclude that Stanley has no standing to bring an action for breach of fiduciary duty against the Bank here because the cause of action accrued to the Corporation, not the shareholders.

We hold the District Court correctly determined that the Bank owed no separate duty to Stanley Kondelik and properly granted summary judgment in favor of the Bank on Stanley's claim for breach of fiduciary duty.

Elizabeth, however, has always had a different status than that of the other Kondeliks. Unlike Emil, Evelyn and Stanley, she has never been a shareholder, director or officer of the Corporation. Stanley, Emil and Evelyn have all acted in one or more such capacities. Moreover, Elizabeth has pledged personal property as security for corporate loans.

The Bank required Elizabeth's signature as guarantor on the Corporation's operating loans. Thus, Elizabeth remains obligated on Emil and Evelyn's share of the Corporation debt as well as Stanley's share. In 1989, Elizabeth signed a personal guaranty for the Corporation's $250,000 operating loan. On May 23, 1991, Elizabeth signed two separate notes for the refinancing of the operating loan--one reflecting Stanley's 47% share of the debt ($156,142) and the other reflecting Emil and Evelyn's 53% share of such debt ($180,000). At the time Elizabeth signed these notes, King was servicing the Corporation's loans. In 1989, Elizabeth advised King that she believed corporate funds were being misused and misappropriated by Evelyn and asked the Bank to monitor the operating loan advances and expenditures.

The District Court relied on our prior decisions concerning shareholder/guarantors to determine that Elizabeth, like Stanley, had no standing to sue here. However, the principles established by Bottrell, Walstad, and Swenson do not apply to these facts where Elizabeth is a guarantor and is not and has never been an officer, shareholder, or director of the Corporation.

A bank may owe a fiduciary duty to a customer if special circumstances exist where the bank acts as an advisor or asserts

12

influence in a customer's business. Lachenmaier v. First Bank Sys., Inc. (1990), 246 Mont. 26, 33, 803 P.2d 614, 618-19. When a fiduciary relationship exists, the party in the stronger position owes an obligation by virtue of the trust relationship to act in the best interests of the beneficiary. Davis v. Church of Jesus Christ of Latter Day Saints (Mont. 1993), 852 P.2d 640, 646, 50 St.Rep. 535, 539.

The Bank maintains here that the existence of a fiduciary duty is a question of law properly determined through summary judgment proceedings, citing Simmons v. Jenkins (1988), 230 Mont. 429, 435, 750 P.2d 1067, 1071. That is an inapposite statement of the law as Simmons held that the existence of a duty of good faith is a question of law properly determinable during summary judgment proceedings. In this case, we are concerned with the existence of a fiduciary duty, not the existence of a duty of good faith.

The existence of a fiduciary duty depends upon satisfactory proof of a special relationship. Davis, 852 P.2d at 646. This relationship is known as a fiduciary relationship. In a prior Montana case which addressed the fiduciary relationship which may exist between a bank and its customer, we noted:

> [M]odern banking practices involve a highly complicated structure of credit and other complexities which often thrust a bank into the role of advisor, thereby creating a relationship of trust and confidence which may result in a fiduciary duty upon the bank to disclose facts when dealing with the customer.

Deist v. Wachholz (1984), 208 Mont. 207, 216-17, 678 P.2d 188, 193 (quoting Tokarz v. Frontier Fed. Sav. & Loan Ass'n (1983), 33 Wash.App. 456, 656 P.2d 1089, 1092).

13

The existence of a fiduciary relationship is not a question of law and it is not appropriate for a district court to make this determination on summary judgment where genuine issues of material fact concerning this relationship are present. Davis, 852 P.2d at 646. The record in this case establishes that there are genuine issues of material fact with regard to a fiduciary relationship between the Bank and Elizabeth. In addition, the District Court failed to distinguish Elizabeth's position as compared to Stanley's position. As a result, we conclude that it was not appropriate here for the District Court to grant summary judgment in favor of the Bank when there are genuine issues of material fact which go to the question of whether a fiduciary relationship existed between the Bank and Elizabeth.

We hold the District Court erred in granting summary judgment in favor of the Bank on Elizabeth Kondelik's claim for breach of fiduciary duty.

## II.

Did the District Court err in determining that claims for misuse and misappropriation of corporate funds cannot be brought by plaintiffs individually?

The District Court determined that the claims for misuse and misappropriation of corporate funds were claims which accrued to the Corporation and as such could not be brought individually by Stanley and Elizabeth. As the court noted, every cause of action must be brought by the real party in interest. Rule 17(a), M.R.Civ.P., provides in pertinent part:

14

> Every action shall be prosecuted in the name of the real party in interest. A personal representative, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another . . . may sue in that person's own name without joining the party for whose benefit the action is brought . . . .

The effect of the first sentence of Rule 17(a) is that the action must be brought by the person who is entitled to enforce the right according to the governing substantive law and will not necessarily be brought in the name of the person who ultimately will benefit from the recovery. 6A Wright, Miller & Kane, <u>Federal Practice and Procedure</u>: Civil 2d § 1543 (1990).

In order to apply Rule 17(a) properly, it is necessary to identify the law that created the substantive right being asserted by the plaintiff. Id., at § 1544. In this case, the substantive law is the law of corporations. The law of corporations must give a person named in Rule 17(a) a right to sue--in this case, "a party with whom or in whose name a contract has been made for the benefit of another."

Montana law provides that a corporation may sue or be sued in the corporate name. Section 35-1-115(1), MCA. It also provides for shareholder derivative actions in certain circumstances. See § 35-l-542, MCA. Neither the Montana Business Corporation Act, §§ 35-l-101 through 35-1-1312, MCA, nor the Montana Close Corporation Act, §§ 35-9-101 through 35-g-504, MCA, provides for an individual guarantor to sue on behalf of the corporation.

Stanley, as a shareholder, cannot sue on a corporate cause of action except in a shareholder derivative suit. Elizabeth was a guarantor of corporate debt but never an officer, director or

15

shareholder of the Corporation. We have said Elizabeth may sue personally on her breach of fiduciary duty claim. The claim for misuse and misappropriation of corporate funds is a cause of action belonging to the Corporation. It does not follow that Elizabeth can sue personally based on a corporate cause of action for misuse and misappropriation of corporate funds merely because she signed personal guarantees. Elizabeth cannot prosecute the claims of the Corporation, she may only pursue her own causes of action. We conclude that Elizabeth and Stanley have no standing to sue individually for an action which belonged to the Corporation.

We hold the District Court correctly determined that claims for misuse and misappropriation of corporate funds cannot be brought by plaintiffs individually.

### III.

Did the District Court err in dismissing plaintiffs' claims of fraud and negligent misrepresentation because they were premature?

Stanley and Elizabeth alleged claims of fraud and negligent misrepresentation against the Bank, claiming they were damaged because the Bank failed to monitor for misuse and misappropriation of corporate funds which they reported to the Bank in 1989. The District Court dismissed this claim without prejudice because any damages were speculative and premature as the Bank had not initiated any foreclosure action.

Plaintiffs claim that certain damages are not speculative or premature. First, they claim the Bank incorrectly calculated the amortization of the principal and interest of the operating loan when it split the amounts and allocated 41% of the debt to Stanley

16

and Elizabeth. This claim was not argued before the District Court and we will not address it for the first time on appeal.

Second, the plaintiffs claim that the difference between the amount they settled on with Emil and Evelyn ($30,000) and the actual amount of money misused or misappropriated by Emil and Evelyn is also calculable as damages. This claim relates to the misuse and misrepresentation claim which belongs to the Corporation and not to plaintiffs individually.

Third, Elizabeth claims she was damaged personally when the Bank allowed the misuse and misappropriation to continue after she had signed personal guarantees and had reported the misuse and misappropriation to King. This claim of damages relates to Elizabeth's separate claim for breach of fiduciary duty.

Finally, plaintiffs claim that the misuse and misappropriation is being allowed to continue and as they remain obligated on 100% of the operating loans and Stanley remains obligated on 100% of the FmHA-guaranteed real estate and equipment loans, they are continuously being damaged by the Bank's failure to monitor the accounts of the Corporation.

We agree with the District Court that any claim for fraud or negligent misrepresentation is premature. Unless the primary obligor--here the Corporation--fails to make payments on the corporate debt, plaintiffs damages are speculative and premature. In Montana Bank of Circle, N.A. v. Ralph Meyers & Son, Inc. (1989), 236 Mont. 236, 243, 769 P.2d 1208, 1213, we stated:

17

> A guarantor differs from a surety in that a surety holds primary liability equal with that of the original borrower. <u>However. a guarantor does not become liable until an intervenina act occurs, such as a default of the oriainal borrower.</u> . . .
> In the instant case, Bank exhausted its remedies against Corporation and the collateral. Thus it was ripe to proceed against Meyers as both a surety and a guarantor. (Emphasis supplied.)

The plaintiffs have not been called upon to honor any guaranty of corporate debt. They will not be held liable on the Corporation's loans unless some intervening act occurs, such as default or foreclosure of the Corporation's debt. If the Bank institutes a foreclosure or collection action against Kondelik Ranch, Inc. in the future, plaintiffs may have a claim relating to fraud or misrepresentation at that time. We conclude that the claims of fraud and misrepresentation were premature because the Bank had not instituted a collection or foreclosure action.

We hold the District Court properly dismissed the plaintiffs' claims of fraud and misrepresentation as being premature.

We affirm the judgment in favor of the Bank as to Stanley Kondelik in all respects and as to Elizabeth Kondelik with the exception of the claim for breach of fiduciary duty. We reverse the summary judgment in favor of the Bank insofar as the breach of fiduciary duty claim of Elizabeth is concerned and remand for further proceedings consistent with this opinion.

_____
Justice

18

WE concur:

Chief Justice

Justices