04-039

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 161

FIRST SECURITY BANK,

       Plaintiff and Appellee,

  v.

KYLE ABEL and ABEL ENTERPRISES, INC.,

       Defendants and Appellants.


APPEAL FROM:    District Court of the Eighteenth Judicial District,
                   In and For the County of Gallatin, Cause No. DV-2002-112
                   Honorable Mike Salvagni, Presiding Judge


COUNSEL OF RECORD:

       For Appellants:

              Terry F. Schaplow, Terry F. Schaplow, P.C., Bozeman, Montana

       For Appellee:

              Calvin L. Braaksma, Landoe, Brown, Planalp, Braaksma & Reida, P.C.,
              Bozeman, Montana


                           Submitted on Briefs:  January 24, 2007

                                 Decided:  May 8, 2008


Filed:

              _____
                         Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Kyle Abel and Abel Enterprises, Inc. (collectively, Kyle) appeal a Decision and Order of the District Court for the Eighteenth Judicial District, Gallatin County, granting the Motion for Summary Judgment filed by First Security Bank (the Bank) in its action for foreclosure upon real and personal property pledged by Kyle as security for a series of financial agreements. We affirm.

¶2 Kyle raises the following issue on appeal: Did the District Court err in granting summary judgment in favor of the Bank for over $600,000.00, and evicting Kyle from her family home by foreclosure?

**Factual and Procedural Background**

¶3 On April 26, 2001, Kyle and her husband, William Abel (William), signed several documents with the Bank. One of the documents was a promissory note and security agreement, bearing loan no. 210175, for $350,000.00. This note required that they make equal monthly payments of $3,150.60 for twenty years. The note specified that the purpose of the loan was "PROPERTY ACQUISITION – BED & BREAKFAST."

¶4 On the same day, William executed and delivered to the Bank a Montana Trust Indenture wherein William pledged the following described real property as security for loan no. 210175:

> Tract of land designated "Whitefish Pete Flat" on Certificate of Survey No. 26-A of Horse Butte Estates on file and of record in the office of the Clerk and Recorder of Gallatin County, Montana, and being a portion of the SE1/4 and SW1/4 of Section 25, Township 12 South, Range 4 East, M.P.M., Gallatin County Montana.

2

In addition, the Bank perfected a security interest in the following personal property through three Uniform Commercial Code (UCC) filings:

> all furniture, fixtures, machinery, equipment, inventory, accounts receivable and general intangibles, now owned or hereinafter acquired, including, but not limited to all parts, accessories, repairs, improvements, and accessions to the property wherever located . . . .

¶5     William and Kyle also signed a promissory note and security agreement, bearing loan no. 210178, for $200,000.00. This note required that they make monthly payments of interest with the entire balance of principal and interest to be paid within six months. The note specifies that the purpose of the loan is "BED & BREAKFAST/LIVERY-BUSINESS START UP." Just as he did with the previous loan, William pledged the real property described above as security for this loan in another Montana Trust Indenture.

¶6     In addition, Kyle delivered to the Bank an Assignment of Percentage of Rights wherein she assigned the following to the Bank as additional collateral for the loans:

> Sixty (60) percent of my total award or recovery pursuant to my contract for services rendered for Melvin Pervais, up to a maximum share for the Bank of $200,000.00 (two hundred thousand dollars).

And, on May 2, 2001, Abel Enterprises, Inc., (with William signing as President of the corporation and Kyle signing as Vice President and Treasurer) executed a Guaranty by Corporation to pay all of William's and Kyle's debts to the Bank, including loan no. 210175 and loan no. 210178.

¶7     On August 3, 2001, William and Kyle executed Change in Terms instruments with the Bank whereby the payment schedules for both loans were modified. The new payment schedule for loan no. 210175 required equal quarterly payments of $9,500.00

3

each.  The new payment schedule for loan no. 210178 required that all principal and accrued monthly interest be payable on October 26, 2001.

¶8    William and Kyle failed to make the required quarterly payments for October 2001 and January 2002 on loan no. 210175.  In addition, they failed to meet their obligation to pay the outstanding balance of $200,000.00 on loan no. 210178, along with interest, on the specified due date.  Consequently, the Bank filed a Complaint against William and Kyle on February 22, 2002, seeking judicial foreclosure of the two deeds of trust.  William and Kyle were in the process of obtaining a divorce.  William failed to respond to the Bank's Complaint and a default judgment was entered against him.

¶9    Thereafter, the Bank moved for summary judgment against Kyle.  The District Court granted the Bank's motion on August 25, 2003, and on September 16, 2003, the court entered a Judgment and Decree of Foreclosure ordering the Sheriff of Gallatin County to sell the West Yellowstone real property at a sheriff's sale.  The court also authorized the Sheriff to conduct a judicial sale of the personal property pledged as additional collateral for the loans if a deficiency existed following the sale of the real property.  And, in the event a deficiency still existed after the sale of the real and personal property, the court ordered that a deficiency judgment be docketed against Kyle.  Kyle appeals the District Court's Judgment and Decree of Foreclosure.

### Standard of Review

¶10  We review an order granting summary judgment de novo using the same M. R. Civ. P. 56 criteria applied by the district court.  *Lee v. USAA Cas. Ins. Co.*, 2001 MT 59, ¶ 24, 304 Mont. 356, ¶ 24, 22 P.3d 631, ¶ 24 (citing *Spinler v. Allen*, 1999 MT

4

160, ¶ 14, 295 Mont. 139, ¶ 14, 983 P.2d 348, ¶ 14). Summary judgment is proper only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Watkins Trust v. Lacosta*, 2004 MT 144, ¶ 16, 321 Mont. 432, ¶ 16, 92 P.3d 620, ¶ 16 (citing M. R. Civ. P. 56(c)).

¶11 To determine the existence or nonexistence of a genuine issue of material fact, we look to the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. *Lee*, ¶ 24 (citing *Erker v. Kester*, 1999 MT 231, ¶ 17, 296 Mont. 123, ¶ 17, 988 P.2d 1221, ¶ 17). In addition, all reasonable inferences that might be drawn from the offered evidence will be drawn in favor of the party opposing the summary judgment motion. *Lee*, ¶ 25.

¶12 The party seeking summary judgment has the burden of demonstrating a complete absence of any genuine factual issues. *Lee*, ¶ 25. Where the moving party is able to demonstrate that no genuine issue as to any material fact remains in dispute, the burden then shifts to the party opposing the motion. *Lee*, ¶ 26. To raise a genuine issue of material fact, the party opposing summary judgment must present material and substantial evidence rather than merely conclusory or speculative statements. *Lee*, ¶ 26. As this Court has previously observed, "proof is required to establish the absence of genuine issues of material fact; a party may not rely on the arguments of counsel." *Montana Metal Buildings, Inc. v. Shapiro*, 283 Mont. 471, 476, 942 P.2d 694, 697 (1997) (citing *City of Bozeman v. AIU Ins. Co.*, 262 Mont. 370, 378, 865 P.2d 268, 273 (1993)).

¶13 In addition, we review a district court's conclusions of law to determine whether they are correct. *Montana Pet. Tank Comp. Bd. v. Crumleys*, 2008 MT 2, ¶ 32, 341

Mont. 33, ¶ 32, 174 P.3d 948, ¶ 32 (citing *State Farm Mut. Auto. Ins. Co. v. Gibson,* 2007 MT 153, ¶ 9, 337 Mont. 509, ¶ 9, 163 P.3d 387, ¶ 9).

## Discussion

¶14    *Did the District Court err in granting summary judgment in favor of the Bank for over $600,000.00, and evicting Kyle from her family home by foreclosure?*

¶15    On appeal, Kyle points to three errors she claims the District Court made in granting the Bank's Motion for Summary Judgment. First, she argues that the District Court erred in determining that any oral representations made by the Bank's agents were merged into the written documents. Second, she argues that the District Court erred in holding that the Bank was entitled to a deficiency judgment. Third, she argues that the District Court erred in finding that the Bank had no fiduciary duty toward her.

¶16    The Bank argues, on the other hand, that the District Court properly granted summary judgment in its favor because it is undisputed that Kyle and William signed the loan documents to borrow money from the Bank and that Kyle and William are in default on those loans. The Bank further argues that neither Kyle nor Abel Enterprises has challenged the loan documents in the District Court or on appeal.

### *Oral representations*

¶17    Kyle argues that the District Court erred in determining that any oral representations made by the Bank's agents were merged into the written documents because the various oral representations she complains of were made after the documents were signed. Kyle claims that on May 2, 2001, when she signed the commercial guaranty whereby Abel Enterprises, Inc., guaranteed the debts, the Bank's agents told her that she

6

was not personally liable on the debt as it was solely William's responsibility, and that only the real property would be used as collateral for the loan. Kyle further claims that in December 2001, long after all of the documents were signed, the Bank's agents told her that she did not need to make the payments on the loans because she was in the process of refinancing the debt with Wells Fargo Bank of Bozeman.

¶18 Kyle's arguments are without merit. Both of the promissory notes that she signed plainly state on page three underneath the heading "APPLICABLE LAW," that "[n]o modification of this agreement may be made without [the Bank's] express *written* consent [emphasis added]." There were no written modifications to the loan documents in this case and any alleged verbal modifications of the loan documents representing that William was solely responsible for the debt, releasing the pledged collateral, or excusing payment on the debt were invalid.

¶19 Moreover, contrary to Kyle's assertions that only the real property would be used as collateral for the loans, the security agreement she signed for loan no. 210178 states that "[t]he secured property includes, but is not limited by . . . UCC-1 FILINGS ON ALL F & F [furniture and fixtures], M & E [machinery and equipment], A/R [accounts receivable], GENERAL INTANGBLE [sic] . . . ." And, the security agreement she signed for loan no. 210175 states that "[t]he secured property includes, but is not limited by . . . UCC FILINGS FOR HORSE BUTTE B & B AND ABEL LIVERY ALL F&F, M&E, A/R, INVENTORY, [and] GENERAL INTANGIBLES . . . ."

¶20 Furthermore, contrary to her contentions that William was solely responsible on the loans, Kyle admitted in her filings with the District Court that she is also responsible

for the debt. As part of her response to the Bank's Motion for Summary Judgment, Kyle filed an affidavit wherein she referred to her September 4, 2002 Dissolution Settlement Agreement indicating that the real property used as collateral for the loan at issue here had been deeded to her by William. Kyle attached portions of this agreement, signed by her, to her affidavit as an exhibit. Under the heading "DEBT ON HOME," this agreement refers to both loans with the Bank and states in reference to each loan: "Both of the marital parties are obligated on this loan."

¶21 Based on the foregoing, we hold that the written loan documents expressed the entire agreement between the parties and any alleged oral understandings among the parties which were not reduced to writing were invalid.

*Deficiency judgment*

¶22 The District Court determined that the trust indenture in this case was not strictly residential and that the agreements were "for a complex mix of residential and commercial purposes securing property on which [Kyle] was to reside and engage in a series of businesses." Consequently, the court ordered judicial foreclosure of the real property described in the Montana Trust Indentures. The court further ordered that the real property be sold at public auction and that, in the event the proceeds of the sale are insufficient to pay the Bank its claim in full, the court would order a judicial sale of the personal property pledged as collateral by the parties.

¶23 Kyle argues on appeal that the District Court erred in concluding that the Bank was entitled to a deficiency judgment. She maintains that the District Court's reliance on the exception carved out in *First State Bank of Forsyth v. Chunkapura*, 226 Mont. 54,

8

734 P.2d 1203 (1987), for allowing deficiency judgments in commercial settings, is misplaced because, during the entire life of the loan, the property was used solely as a residence for Kyle and her family.

¶24 As support for her contentions, Kyle notes in her brief that the original owner of the Horse Butte Estates (the property at issue here) filed covenants with the Gallatin County Clerk and Recorder's Office on March 9, 1971, and again on September 4, 1975, that restricted the property to residential uses only. She argues that the property was never used for a commercial purpose as she was unable to obtain the proper permits, thus because the property was used solely as a single family residence for her and her family, a deficiency judgment is precluded.

¶25 Although the Bank concedes that the real property had been used by Kyle and her family as their residence, the Bank points out that the property was pledged as part of a larger, more complex business loan transaction. The Bank maintains that since the loans were for business purposes, Montana law allows the entry of a deficiency judgment against the borrowers if a deficiency remains following sale and liquidation of the real property and other collateral.

¶26 The law as it relates to deficiency judgments in Montana is set forth in this Court's decisions in *Chunkapura* and *Carpenters-Emp. Ret. Tr. v. Galleria Part.*, 239 Mont. 250, 780 P.2d 608 (1989). In *Chunkapura*, we ruled that there can be no deficiency judgment following the judicial foreclosure of a Montana trust indenture if the property secured is a single family residence. *Chunkapura*, 226 Mont. at 66-67, 734 P.2d at 1210-11. We determined in *Chunkapura* that Montana law at that time involved a *quid pro quo* with

9

lenders giving up the right to a deficiency judgment and borrowers giving up the right of post-foreclosure possession and redemption. *Chunkapura*, 226 Mont. at 57, 734 P.2d at 1205. However, in our Order on Rehearing in *Chunkapura*, we drew a distinction regarding loans made in a commercial setting:

> Such quid pro quo does not apply to loans made in commercial settings, nor to trust deeds secured by residential or other property which are only part of larger, more complex loans for commercial or agricultural purposes.
> . . . .
> Our opinion in this cause is limited to the Chunkapura property, and is to be considered as precedent only for trust deeds related to occupied, single family residential property.

*Chunkapura*, 226 Mont. at 66-67, 734 P.2d at 1210-11.

¶27 Subsequent decisions of this Court reaffirmed this distinction between commercial and residential loan transactions in the context of deficiency judgments. *See Carpenters*, 239 Mont. at 258, 780 P.2d at 613 (holding that a deficiency judgment could be recovered upon the foreclosure of a trust indenture as it related to a commercial loan); *Midfirst Bank, State Sav. Bank v. Ranieri*, 257 Mont. 312, 848 P.2d 1046 (1993) (holding that a deficiency judgment was available following the foreclosure of a deed of trust securing a townhouse treated by the mortgagor as rental property rather than his primary residence).

¶28 In the case *sub judice*, the security agreement for loan no. 210175, signed by Kyle, indicated that the purpose of the loan was "PROPERTY ACQUISITION – BED & BREAKFAST." And, the security agreement for loan no. 210178, also signed by Kyle, indicated that the purpose of that loan was for "BED & BREAKFAST/LIVERY-BUSINESS START UP." In addition, in both security agreements, the parties may

indicate whether the real property used for collateral will be used for "personal, business or agricultural" purposes and, in both instances, the box next to "business" is checked.

¶29 It is well established in Montana that one who executes a written contract is presumed to know the contract's contents. *Stowers v. Community Medical Center, Inc.*, 2007 MT 309, ¶ 12, 340 Mont. 116, ¶ 12, 172 P.3d 1252, ¶ 12 (citing *Gliko v. Permann*, 2006 MT 30, ¶ 35, 331 Mont. 112, ¶ 35, 130 P.3d 155, ¶ 35).

¶30 Based on the foregoing, we hold that the trust indenture in this case was not strictly residential and that the District Court did not err in ordering a deficiency judgment.

*Fiduciary duty*

¶31 Kyle argues that the District Court erred in determining that the Bank had no fiduciary duty to her. Kyle claims that a close relationship existed between her and the Bank's loan officer, Maggie Anderson, because they participated in school functions together and their children shared overnight stays at their respective houses. Consequently, Kyle asserts that she relied on Anderson's advice and counsel in banking matters and that this alleged fiduciary relationship gave rise to special duties on the part of the Bank which may excuse payment of the loan. In addition, Kyle contends that because genuine issues of material fact exist regarding the existence of the Bank's fiduciary duty, the Bank was not entitled to summary judgment.

¶32 Kyle relied on *Kondelik v. First Fid. Bk. of Glendive*, 259 Mont. 446, 857 P.2d 687 (1993), in support of her contention that the existence of a fiduciary relationship is a

11

question of fact.  However, *Kondelik* has since been overruled.  *See Gliko*, ¶ 24.  Instead, we have since held that

> "whether a fiduciary duty exists between two parties is a question of law, not fact, and it may be resolved on summary judgment when no genuine issues of material fact remain.  Likewise, whether a 'special relationship' exists between two parties such as would give rise to a fiduciary duty is a question of law, not fact, for the relationship and the duty are two sides of the same coin."

*McCoy v. First Citizens Bank*, 2006 MT 307, ¶ 31, 335 Mont. 1, ¶ 31, 148 P.3d 677, ¶ 31 (quoting *PTE v. United Banks*, 2006 MT 236, ¶ 31, 333 Mont. 505, ¶ 31, 143 P.3d 442, ¶ 31).

¶33   "In Montana, the relationship between a bank and its customer is generally described as that of debtor and creditor, and does not give rise to fiduciary responsibilities."  *McCoy,* ¶ 30 (citing *PTE,* ¶ 29; *Lachenmaier v. First Bank Systems, Inc.*, 246 Mont. 26, 33, 803 P.2d 614, 618 (1990)).  "A limited exception to this rule exists, however, when special circumstances place a bank beyond the role of a simple creditor and into the role of advisor."  *McCoy*, ¶ 30.

¶34   "A fiduciary relationship exists between a bank and its debtor only if special circumstances indicate exclusive and repeated dealings with the Bank."  *Coles Dept. Store v. First Bank*, 240 Mont. 226, 229, 783 P.2d 932, 934 (1989) (quoting *Pulse v. North American Land Title Co.*, 218 Mont. 275, 283-84, 707 P.2d 1105, 1110 (1985)).  We stated in *Coles* that to establish a fiduciary relationship, in addition to requiring a long history of dealings with the bank, the bank must act in some capacity other than that common in the usual arms-length debtor/creditor relationship.  *Coles*, 240 Mont. at 229,

12

783 P.2d at 934 (citing *Simmons v. Jenkins*, 230 Mont. 429, 433-34, 750 P.2d 1067, 1070 (1988)).

¶35 Here, even though Kyle claims that the multitude of documents and the complexity of those documents placed the Bank in the role of her advisor, there is nothing in the record to suggest that. In an affidavit attached to the Bank's reply to Kyle's answer brief, Anderson, the Bank's loan officer, attached a copy of Kyle's resume which Kyle had given her at the time Kyle initially applied for financing. The resume indicates that Kyle has a law degree from the University of San Diego and that she has "experience in the legal field, with emphasis on marketing products and services" and has an "extensive legal background." With this background, Kyle hardly would have needed the Bank to interpret the loan documents for her and to act as her advisor. Moreover, no prior banking relationship existed between the parties.

¶36 Based on the foregoing, we hold that the District Court properly concluded that the parties are debtor and creditor and, as such, the Bank did not owe Kyle a fiduciary duty.

*Conclusion*

¶37 The District Court properly determined that no valid oral modifications of the loan documents existed, the loans were for business purposes, and the Bank did not have a fiduciary duty to Kyle.

¶38 Accordingly, we hold that the District Court did not err in granting summary judgment in favor of the Bank.

¶39 Affirmed.

13

/S/ JAMES C. NELSON


We Concur:

/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ PATRICIA COTTER
/S/ JIM RICE