No. 04-600

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 30

JERROLD L. GLIKO, TRUSTEE OF
THE EDNA URICK FAMILY TRUST,

      Plaintiff and Appellant,

  v.

KEN PERMANN and MARIAN  PERMANN,
and BELT VALLEY BANK,

      Defendants, Respondents and Cross-Appellants.

APPEAL FROM:    The District Court of the Eighth Judicial District,
               In and For the County of Cascade, Cause No. BDV 2001-286,
               Honorable Julie Macek, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

            Patricia D. Peterman, Patten, Peterman, Bekkedahl & Green,
            Billings, Montana

       For Respondents:

            Benjamin R. Graybill, Graybill, Ostrem, Crotty and Stubbs,
            Great Falls, Montana (Bank)

            Daniel B. Levine, Attorney at Law, Great Falls, Montana (Permanns)

                     Submitted on Briefs:  July 26, 2005

                          Decided:  February 14, 2006

Filed:

                        Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Jerrold Gliko (Gliko), in his capacity as trustee of the Edna Urick Family Trust, appeals the orders entered in the Eighth Judicial District Court, Cascade County, granting summary judgment to Belt Valley Bank (Bank) and a judgment, after trial, that an easement was validly granted to Ken and Marian Permann (Permanns) across the Appellant's property. We affirm.

¶2 The following issues are dispositive on appeal:

¶3 Did the District Court err by granting summary judgment to the Bank on Gliko's claim of breach of fiduciary duty?

¶4 Did the District Court err by ruling that the granted easement was valid?

BACKGROUND

¶5 Edna Urick (Urick) spent summers on her land outside of Belt, Montana. Vic Smerker owned a neighboring plot of land which he leased to the Permanns in 1994. To access the leased property, it was necessary for the Permanns to cross Urick's land. Urick had customarily allowed Smerker to cross her land, and she extended the same courtesy to the Permanns, permitting them to cross when they moved cattle or went camping. In December 2000 the Permanns agreed to purchase the land from Smerker, contingent upon the Permanns obtaining a signed, written easement across Urick's land. The Bank, from which the Permanns were obtaining some of their financing for the purchase, insisted upon such an easement as a condition of the loan.

¶6     In early December 2000, the Permanns went to Urick's house and requested that Urick grant the easement. She agreed. On December 14, 2000, the Permanns met Urick at the Bank to sign an easement form, but the parties decided not to use that form. The Bank then obtained an alternative easement form from a title company and retyped it, filling in the relevant names and the legal description of the property.

¶7     The following day, Ken Permann and a Bank employee, Robert Helsen, brought the new easement document to Urick for her to sign. When asked, Urick said she understood the document. Likewise, when asked, Urick said she did not want her sons to review the document prior to her signing. Urick was told that she did not need to sign at that time, if she did not want to, but she proceeded to sign the document anyway. Though the document does not contain restrictions on the easement, both parties understood that no "freeway" would be built across Urick's property and that the Permanns would not subdivide their property. The easement satisfied the loan condition, and the Permanns obtained the loan from the Bank and purchased Smerker's land.

¶8     A few weeks later, when Urick's sons learned about the easement, they were displeased and persuaded Urick to rescind the agreement. On January 16, 2001, Urick requested that the Permanns convey the easement back to her. The Permanns refused, and on March 28, 2001, Urick filed suit alleging mistake, duress, menace, fraud, constructive fraud, undue influence, and lack of consideration as bases for rescinding the easement. Urick was deposed on June 5, 2001, and her deposition was later admitted into evidence at trial. On September 26, 2003, before the cause proceeded to trial, Urick

passed away, and her son Jerry Gliko, as trustee of the Edna Urick Family Trust, continued the action in her stead.

¶9    In the second amended complaint filed January 28, 2003, Urick added the Bank as a defendant, alleging breach of fiduciary duty and negligence.  However, on February 20, 2004, the District Court granted summary judgment in favor of the Bank, ruling that the Bank owed no duty to Gliko in the easement transaction and therefore could not negligently breach such a duty.

¶10    The cause against the Permanns proceeded to a bench trial on January 20, 2004, and on March 3, 2004.  On July 23, 2004, the District Court issued its judgment in the matter, ruling that Urick had validly granted the Permanns an easement:

> The easement may be used for agricultural and recreational use of the Permann property and for building and using a cabin on the Permann property.  In the event of an attempt to use the easement for some other use which increases the burden on the Urick property beyond that which would occur with the uses specifically allowed, Plaintiff and Plaintiff's successors and assigns may bring a future action seeking to enjoin such use.

The District Court concluded that the easement was not obtained through duress, menace, fraud, constructive fraud, or mistake.

¶11    Gliko appeals the orders granting summary judgment to the Bank and ruling that the granted easement is valid.

STANDARD OF REVIEW

¶12    We articulated the standard of review of the granting of summary judgment in *Grimsrud v. Hagel*, 2005 MT 194, ¶ 14, 328 Mont. 142, ¶ 14, 119 P.3d 47, ¶ 14 (citations and quotation marks omitted):

4

This Court's review of a district court's grant of summary judgment is *de novo*. Our evaluation is the same as that of the trial court. We apply the criteria contained in Rule 56, M.R.Civ.P. According to this rule, the moving party must establish both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. If this is accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. If the court determines that no genuine issues of fact exist, the court must then determine whether the moving party is entitled to judgment as a matter of law.

¶13 This Court reviews a district court's conclusions of law for correctness and its findings of fact for clear error. *Galassi v. Lincoln County Bd. of Comm'rs*, 2003 MT 319, ¶ 7, 318 Mont. 288, ¶ 7, 80 P.3d 84, ¶ 7.

## DISCUSSION

¶14 **Did the District Court err by granting summary judgment to the Bank on Gliko's claim of breach of fiduciary duty?**

¶15 Gliko argues that whether the Bank had a fiduciary duty to Urick in the easement transaction was a question of fact and, therefore, inappropriate to decide on summary judgment. The Bank responds that whether a special relationship existed such as would give rise to a fiduciary relationship between the Bank and Urick is a question of law, and since the material facts were undisputed, this question was appropriately and correctly resolved on summary judgment.

¶16 A review of our decisions on this question reveals a line of authority that has held that the existence of a special relationship giving rise to a fiduciary duty is a question of law. We first recognized that such a relationship could arise between a bank and its customers in *Deist v. Wachholz* (1984), 208 Mont. 207, 216-17, 678 P.2d 188, 193

5

(quoting *Tokarz v. Frontier Fed. Sav. & Loan Ass'n* (Wash. Ct. App. 1983), 656 P.2d 1089, 1092) (citations and brackets omitted), in which this Court stated:

> The relationship between a bank and its customer is generally described as that of debtor and creditor and as such does not give rise to fiduciary responsibilities. . . . "[M]odern banking practices involve a highly complicated structure of credit and other complexities which often thrust a bank into the role of an advisor, thereby creating a relationship of trust and confidence which may result in a fiduciary duty upon the bank to disclose facts when dealing with the customer."

> The existence of a fiduciary duty to a loan customer depends upon satisfactory proof of a special relationship.

We again acknowledged this principle in *Pulse v. North Am. Land Title Co.* (1985), 218 Mont. 275, 283-84, 707 P.2d 1105, 1110, though we concluded therein that no such relationship had developed. In subsequent decisions, this Court concluded that, in the absence of a genuine issue of material fact, the question of the existence of a fiduciary relationship could properly be resolved on summary judgment, thus confirming that the question is one of law. *See Simmons v. Jenkins* (1988), 230 Mont. 429, 750 P.2d 1067 (affirming summary judgment in favor of bank on the grounds that no fiduciary relationship existed between the parties where the respondent bank gave no advice to the appellants in the disputed real estate transaction and where there was no long-standing relationship between the parties); *Shiplet v. First Sec. Bank* (1988), 234 Mont. 166, 762 P.2d 242 (affirming summary judgment in favor of the respondent bank that had financed the appellants' ranching operations where the appellants did not rely on the bank's advice, did not heed the bank's advice, and were represented by counsel in the relevant transactions); *Sprunk v. First Bank Sys.* (1992), 252 Mont. 463, 830 P.2d 103 (affirming

summary judgment because the appellant's relationship with a subsidiary bank did not create a fiduciary duty extending to the respondent parent company); *Simmons Oil Corp. v. Holly Corp.* (1993), 258 Mont. 79, 852 P.2d 523 (affirming summary judgment in favor of the respondent bank where there was little involvement between the bank and the appellant and the appellant was represented by independent counsel).[1]

¶17    In *Simmons v. Holly*, we implicitly rejected the dissenting opinion's contention that "[w]hether or not there were special circumstances which should give rise to a fiduciary duty is a classic question of fact." *Simmons v. Holly*, 258 Mont. at 93, 852 P.2d at 531 (Trieweiler, J., joined by Hunt, J., concurring and dissenting).  However, this Court introduced ambiguity on this point when we decided *Davis v. Church of Jesus Christ of Latter Day Saints* (1993), 258 Mont. 286, 852 P.2d 640, which involved a church and one of its members rather than a bank and its customers.  Davis had fallen and sustained injuries on the defendant church's property, and she had sought compensation from the church for her medical bills.  The church appealed the district court's denial of its motion for summary judgment on Davis's breach of fiduciary duty claim.  Davis argued that her extensive financial, personal, and social involvement with the church gave rise to a fiduciary duty owed to her by the church.  *Davis*, 258 Mont. at 295-96, 852

---

[1]*Compare Lachenmaier v. First Bank Sys.* (1990), 246 Mont. 26, 803 P.2d 614.  In *Lachenmaier*, we affirmed summary judgment in favor of the respondent bank where the respondent bank had entered into debt-restructuring negotiations with defaulting borrowers.  However, we did not resolve the question of the existence of a fiduciary duty because we concluded that, even if there were such a duty, there was no breach of that duty "when the Bank acted for solid business reasons." *Lachenmaier*, 246 Mont. at 34, 803 P.2d at 619.

P.2d at 646. In our decision affirming the district court, we cited *Deist* for the general proposition that the "existence of a fiduciary duty depends upon satisfactory proof of a special relationship," and we concluded that "such a determination is not appropriate on summary judgment." *Davis*, 258 Mont. at 296, 852 P.2d at 646. We held that "whether a fiduciary relationship existed" constituted an issue "of material fact which preclude[s] summary judgment." *Davis*, 258 Mont. at 296, 852 P.2d at 646.

¶18    We further muddled the point by our internally inconsistent opinion in *Kondelik v. First Fidelity Bank* (1993), 259 Mont. 446, 857 P.2d 687. Stanley and Elizabeth Kondelik sued the respondent bank for breach of fiduciary duty relating to the division of assets and liabilities of a family-owned ranching corporation. Stanley held a 47 percent share in the corporation, and his brother owned 53 percent. After disagreement about the operations of the business and other related matters, the brothers agreed to split the assets and liabilities of the corporation in proportion to their share ownership, with Stanley relinquishing his stock and his brother obtaining full control of the corporation. The respondent bank assisted Stanley with the division, but Stanley remained a personal guarantor of the corporation's loans. The bank insisted that Elizabeth, who had little involvement with the corporation, also sign as a personal guarantor of some of the operating debt of the corporation. The division was ultimately unsuccessful, and the Kondeliks filed suit, alleging in part that the bank breached its fiduciary duty to them. The Kondeliks appealed the district court's grant of summary judgment to the bank and its conclusion that no fiduciary duty existed between the bank and the Kondeliks.

8

¶19 In our decision, we treated Stanley and Elizabeth separately because Elizabeth had never been a shareholder or officer of the corporation. Regarding Stanley, we stated the following:

> We hold the District Court correctly determined that the Bank owed no separate duty to Stanley Kondelik and properly granted summary judgment in favor of the Bank on Stanley's claim for breach of fiduciary duty.

*Kondelik*, 259 Mont. at 454, 857 P.2d at 693.

¶20 Relying on *Deist*, *Lachenmaier*, and *Davis*, we stated the following in regard to Elizabeth:

> *The existence of a fiduciary relationship is not a question of law* and it is not appropriate for a district court to make this determination on summary judgment where genuine issues of material fact concerning this relationship are present. . . . [W]e conclude that it was not appropriate here for the District Court to grant summary judgment in favor of the Bank when there are genuine issues of material fact which go to the question of whether a fiduciary relationship existed between the Bank and Elizabeth.

*Kondelik*, 259 Mont. at 456, 857 P.2d at 693-94 (emphasis added).

¶21 In addition, we rejected the bank's argument that the existence of a fiduciary relationship is a question of law, concluding that the bank improperly relied on *Simmons v. Jenkins*:

> The Bank maintains here that the existence of a fiduciary duty is a question of law properly determined through summary judgment proceedings, citing *Simmons v. Jenkins* (1988), 230 Mont. 429, 435, 750 P.2d 1067, 1071. That is an inapposite statement of the law as *Simmons* held that the *existence of a duty of good faith* is a question of law properly determinable during summary judgment proceedings. In this case, we are concerned with the existence of a fiduciary duty, not the existence of a duty of good faith.

9

*Kondelik*, 259 Mont. at 455, 857 P.2d at 693. In so doing, we unfortunately misconstrued the holding of *Simmons* that the question may be resolved on summary judgment. The appellant in *Simmons* argued that there was *either* a breach of a fiduciary duty *or* a breach of a duty of good faith and fair dealing between the parties and that the breach constituted constructive fraud. *Simmons*, 230 Mont. at 432-33, 750 P.2d at 1070. In deciding the issue, we stated "that the *breach* of a duty of good faith is a question of fact not susceptible to summary judgment" but that the "existence of such a duty . . . is a question of law properly determined during summary judgment proceedings." *Simmons*, 230 Mont. at 435, 750 P.2d at 1071. Though these comments were directed toward the duty of good faith, we nevertheless concluded that neither duty existed, and we affirmed summary judgment in favor of the bank. *Simmons*, 230 Mont. at 434-35, 750 P.2d at 1070-71. We could not have affirmed summary judgment without concluding, at least implicitly, that the existence of a fiduciary duty is a question of law.

¶22     Thus, in *Kondelik*, we held that the existence of a fiduciary duty between Stanley and the bank was a question of *law* properly resolved on summary judgment, yet we held that the existence of a fiduciary duty between Elizabeth and the bank was a question of *fact* that was improperly resolved on summary judgment. In addition to its internal discrepancy and its erroneous analysis of *Simmons v. Jenkins*, *Kondelik* failed to address *Shiplet*, *Sprunk*, and *Simmons v. Holly* where we upheld grants of summary judgment that resolved whether a fiduciary duty existed between the parties.

¶23 An analytical flaw in *Kondelik* may have contributed to this error. The analysis in *Kondelik* conflated two questions: whether the existence of a fiduciary relationship was a matter of law or fact and whether an issue of material fact remained when the district court rendered summary judgment. This conflation is evident in our holding regarding Elizabeth: "The existence of a fiduciary relationship is not a question of law and it is not appropriate for a district court to make this determination on summary judgment where genuine issues of material fact concerning this relationship are present." *Kondelik*, 259 Mont. at 456, 857 P.2d at 693. If the question was not one of law, it was one of fact; thus, to consider whether "genuine issues of material fact concerning this relationship [were] present" was both superfluous and misleading. Courts cannot not resolve factual issues on summary judgment. If the question was one of law, then the district court properly could have considered whether material facts remained disputed, and if not, could have decided the question pursuant to the rules governing summary judgment.

¶24 We must today resolve the inconsistency in our precedent. In other contexts, we have generally held that whether a legal duty exists between two parties is a question of law. *See, e.g., Dukes v. City of Missoula*, 2005 MT 196, ¶ 11, 328 Mont. 155, ¶ 11, 119 P.3d 61, ¶ 11; *Henricksen v. State*, 2004 MT 20, ¶ 21, 319 Mont. 307, ¶ 21, 84 P.3d 38, ¶ 21. Consistent with our decisions in *Simmons v. Jenkins*, *Shiplet*, *Sprunk*, *Simmons v. Holly* and even that portion of *Kondelik* relating to Stanley, we now reaffirm that whether a fiduciary duty exists between two parties is a question of law, not fact, and it may be resolved on summary judgment when no genuine issues of material fact remain.

11

Likewise, whether a "special relationship" exists between two parties such as would give rise to a fiduciary duty is a question of law, not fact, for the relationship and the duty are two sides of the same coin. To determine the existence or absence of a special relationship in cases where it normally does not exist—such as between a bank and a customer—a court may be required to make a fact-intensive inquiry. The circumstances of the particular relationship are factual, and disputes over material facts will preclude summary judgment. However, the *conclusion* drawn by a court from undisputed facts is one of law, not of fact. To the extent that *Davis* and *Kondelik* stand for the proposition that the existence of a fiduciary duty between two parties is a question of fact, they are overruled.

¶25   We recognize that "[t]he determination of the existence of genuine issues of material fact is one that is not always easily ascertained." *Sprunk*, 252 Mont. at 466, 830 P.2d at 105. However, to this end, we reaffirm that "mere disagreement about the interpretation of a fact or facts does not amount to genuine issues of material fact," *Sprunk*, 252 Mont. at 466, 830 P.2d at 105, and that "conclusory statements do not rise to the level of genuine issues of material fact." *Sprunk*, 252 Mont. at 466-67, 830 P.2d at 105.

¶26   Turning to the case before us, Gliko argues that two evidentiary issues were sufficient to create disputes of material fact impacting on the determination of whether

12

the Bank owed Urick a fiduciary duty.[2]  The first is a statement Urick made in her deposition:

> And then they had—but I did say, when I went down to sign this, that I wanted it stipulated that [the easement] would be used for only agricultural purposes.  And they said they couldn't put that in the paper that they were writing up.

The second is a vague statement by Bank employee Helsen in his testimony at trial in which he indicated that he had agreed with Ken Permann when Permann told Urick on the day she signed the easement document that it was "just a basic document that's used many times."  Though the parties disagree about their import, the only factual *dispute* relating to either of these statements is whether the pronoun "they" in Urick's deposition refers to the Bank or to the Permanns.  Without more, this dispute simply does not rise to the level of "material."  Thus, the District Court did not err by determining that no genuine issues of material fact precluded summary judgment.

¶27    We next consider whether the District Court reached the correct conclusion of law.  Gliko argues from a narrow factual basis that the District Court reached an incorrect conclusion of law.  He contends that the aforementioned statements of Urick and Helsen, "although disputed, show that the Bank acted as Edna's advisor and asserted influence

---

[2] Gliko raises for the first time in his Reply Brief that the Bank's actions relating to preparing the easement form amount to unauthorized practice of law, which it contends further demonstrates the special relationship between the Bank and Urick.  The Bank moved to strike this argument on the ground that it had not been raised in Gliko's Opening Brief.  The Bank's motion is well-taken.  Rule 23(c), M.R.App.P., provides that the "reply brief must be confined to new matter raised in the brief of the respondent."  "We will not address the merits of an issue presented for the first time in a reply brief on appeal."  *Pengra v. State*, 2000 MT 291, ¶ 13, 302 Mont. 276, ¶ 13, 14 P.3d 499, ¶ 13.  Therefore, we do not address this argument by Gliko.

13

over her property and affairs." We disagree. When the statements are viewed in the light most favorable to Gliko, they do not demonstrate a special relationship between the parties regarding the Urick property sufficiently similar to the "banking practices" that "involve a highly complicated structure of credit and other complexities which often thrust a bank into the role of an advisor" that we described in *Deist*. *Deist*, 208 Mont. at 216, 678 P.2d at 193; *see Simmons v. Jenkins*, 230 Mont. at 433-34, 750 P.2d at 1070 (no fiduciary relationship where the bank gave no advice to the appellants). Consequently, we conclude that the District Court properly held that the Bank owed Urick no fiduciary duty herein.

¶28 Therefore, we hold that the District Court did not err in granting summary judgment in favor of the Bank.

¶29 **Did the District Court err by ruling that the granted easement was valid?**

¶30 Gliko argues that there are four independent and sufficient grounds upon which the rescission of the easement rested: mutual mistake, constructive fraud, undue influence, and lack of consideration. He contends that the District Court erred by ruling that none of these grounds applied. The Permanns respond that the District Court ruled correctly and that none of the grounds provided a basis to rescind the easement.

¶31 Section 28-2-1711, MCA, governs when a party may rescind a contract or an easement:[3]

A party to a contract may rescind the same in the following cases only:

---

[3] Sections 70-1-501 and -502, MCA, apply the rules of law concerning contracts to grants of easements.

14

(1) if the consent of the party rescinding or of any party jointly contracting with him was given by mistake or obtained through duress, menace, fraud, or undue influence exercised by or with the connivance of the party as to whom he rescinds or of any other party to the contract jointly interested with such party;

(2) if, through the fault of the party as to whom he rescinds, the consideration for his obligation fails in whole or in part;

(3) if such consideration becomes entirely void from any cause;

(4) if such consideration, before it is rendered to him, fails in a material respect from any cause; or

(5) if all the other parties consent.

¶32    Gliko maintains that the easement could be rescinded because each party mistakenly thought that the easement would permit only such use as was in accordance with previous practice. Because the easement document contains no such limitations, Gliko argues that the grant must be the result of a mutual mistake of fact.

¶33    Section 28-2-409, MCA, describes what constitutes a mistake of fact:

Mistake of fact is a mistake not caused by the neglect of a legal duty on the part of the person making the mistake and consisting in:

(1) an unconscious ignorance or forgetfulness of a fact, past or present, material to the contract; or

(2) belief in the present existence of a thing material to the contract which does not exist or in the past existence of such a thing which has not existed.

¶34    The operative portion of the easement document reads as follows:

FOR VALUE RECEIVED, Edna R. Urick, ("Grantor"), grants unto Kenneth and Marian Permann, ("Grantees"), and to their successors and assigns hereafter, an Easement and Right-of-Way, for ingress to and egress from, and to run with and for the benefit of land owned by Grantees described as the N1/2NW1/4 and N1/2NE1/4 of Section 21, Township 19 North, Range 8 East, Cascade County, Montana.

Said easement follows a road presently existing, extending in a northerly direction from the Jarvi Road through a portion of the W1/2W1/2 of Section 21, Township 19 North, Range 8 East (as shown on attached map)

15

and continuing in a northerly direction to the south boundary of Grantees property.

¶35 The easement document is unambiguous and simple. Gliko has not offered evidence demonstrating that either party was unconsciously ignorant or forgetful of a material fact. "One who executes a written contract is presumed to know the contents of the contract and to assent to those specified terms . . . ." *Quinn v. Briggs* (1977), 172 Mont. 468, 476, 565 P.2d 297, 301, and each party had a duty to understand the terms of the agreement. *See Quinn*, 172 Mont. at 478, 565 P.2d at 302. Here, the document's silence regarding the use restrictions that the parties talked about does not, without more, negate the consent each gave to the terms of the written agreement. Therefore, Gliko has failed to demonstrate that the parties made any mistakes of fact that would justify rescission of the easement, and we hold that the District Court did not err on this issue.

¶36 Gliko also argues that the easement could be rescinded because the Permanns committed constructive fraud as defined by § 28-2-406, MCA. He contends that Ken Permann told Urick that the easement would be limited to the same uses as in the past, and that the Permanns were unjustly enriched by this misrepresentation. However, Urick testified that she could not recall any misleading statement made to her relating to the easement. Thus, we conclude that the District Court correctly decided that rescission was not appropriate on this ground.

¶37 Gliko makes the additional argument that Urick was subject to undue influence as defined by § 28-2-407, MCA, stating that Urick "felt she had no choice but to sign" the easement. Nothing from the record leads to this conclusion, and there is no other

16

evidence to suggest that the statutory elements of undue influence have been met in any other way. To wit, there was no confidential relationship between the parties, Urick was not possessed of weakness of mind, and no advantage was taken of Urick's necessities or distress. Therefore, we hold that the District Court did not err by ruling that Urick could not rescind for this reason.

¶38 Lastly, Gliko contends that lack of consideration is a valid ground for rescission of the easement. However, § 70-1-502, MCA, expressly permits voluntary transfers of property interests without consideration, and there is no evidence that consideration was, or was meant to be, given. Accordingly, we conclude that the District Court did not err on this issue.

¶39 Given our holding on the foregoing issues, we need not address the other issues raised by the parties.

CONCLUSION

¶40 The Bank did not owe a fiduciary duty to Urick, and this question of law was properly and correctly resolved on summary judgment. In addition, the District Court did not err in its order ruling that the granted easement was valid.

¶41 Affirmed.

/S/ JIM RICE

17

We concur:


/S/ JOHN WARNER
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS