No. 05-724

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 226

_____

EDWARD H. LYNES, a/k/a EDWARD J. LYNES,
PATRICIA LYNES, and HIGH COUNTRY ROCKIN
ROUNDUP, L.L.C., a Montana Limited Liability
Company,

        Plaintiffs and Appellants,

   v.

MATT HELM, MYRNA MINTYALA,
CHRISTINE DEBUFF, and DARRELL TUSS,

        Defendants and Respondents.

_____

APPEAL FROM:    District Court of the Tenth Judicial District,
                     In and for the County of Fergus, Cause No. DV 03-105,
                     The Honorable E. Wayne Phillips, Presiding Judge.

COUNSEL OF RECORD:

        For Appellants

                Helge Naber, Attorney at Law, Great Falls, Montana

        For Respondents

                Torger Oaas, Oaas Law Office, Lewistown, Montana

_____

                                 Submitted on Briefs:  October 3, 2006

                                      Decided:  September 11, 2007

Filed:

               _____
                          Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 Appellants, Edward Lynes and Patricia Lynes (Lynes), along with High Country Rockin Roundup, L.L.C., (HCRR) brought suit by way of a third-party complaint against four HCRR members, Matt Helm, Myrna Mintyala, Christine DeBuff, and Darrell Tuss, (referred to collectively as Respondents). Lynes and HCRR allege that the Respondents acted unlawfully in advancing HCRR money and in later causing HCRR to repay this money to them. Lynes claim that repayment to Respondents rendered HCRR unable to pay a loan it had received from Western Security Bank (Bank). Lynes had pledged personal assets to the Bank to secure HCRR's loan and were therefore forced to pay the loan themselves. Thus, Lynes claim they were personally damaged. Both Lynes and HCRR sought reimbursement from the Respondents for the amount Lynes paid the Bank. The District Court for the Tenth Judicial District, Fergus County, granted Respondents' motion for summary judgment and Lynes appeal. We affirm.

## ISSUES

¶2 We restate and address the following issues on appeal:

¶3 1. Did the District Court err in granting Respondents' motion for summary judgment based on the record before it?

¶4 2. Did the District Court err in not granting Lynes' motion to compel discovery?

¶5 3. Did the District Court err in not granting Lynes' motion for additional time to file further affidavits and documents in opposition to the Respondents' motion for summary judgment?

BACKGROUND

¶6      Lynes, along with the Respondents and several others, organized HCRR, a limited liability company established pursuant to The Montana Limited Liability Company Act, Title 35, Chapter 8, MCA.  Edward Lynes initially acted as the manager of HCRR. HCRR sold twenty shares to its members for $2,000 each.  In addition, the Bank loaned $40,000 to HCRR.  Lynes signed a security agreement pledging personal assets to secure the Bank loan.

¶7      HCRR made arrangements to put on a large rock concert near Lewistown. However, ticket sales for the rock concert were poor.  The day of the concert several of the bands scheduled to play demanded payment before they would perform.  HCRR did not have enough money in its account to pay the bands.

¶8      Approximately nineteen members of HCRR met at the concert site.  Lynes and the Respondents were present.  At this meeting the members discussed whether HCRR should cancel the concert and refund purchased tickets or, should some Members advance additional money to HCRR so that it could pay the bands to perform.  Edward Lynes stated he would not put any more money into HCRR.  The members present decided to collect additional money from the Respondents so that the concert would take place.  The members planned to make enough money from additional ticket sales and concession sales to cover the costs of the concert.  None of HCRR's members that were present, including Lynes, objected to this plan.  The Respondents then paid $57,200 to the bands.  It is unclear whether the new money was paid into the HCRR account and then paid out to the bands, or paid directly to the bands.  There is, however, no contest

3

that the money from Respondents was paid to the bands so that the concert sponsored by HCRR could take place. The show went on.

¶9　The day after the concert, some but not all of the members of HCRR held a meeting and elected a new board of directors. Tuss was elected president, Helm, vice president, Mintyala, co-secretary/treasurer, and DeBuff, co-secretary/treasurer. Edward Lynes seconded the motion to elect Helm president.

¶10　The income from the concert was not enough to pay the costs of putting it on. The new board of directors calculated HCRR's concert expenses to be $232,744.32 offset by income of $81,957.85, leaving HCRR $150,286.47 in debt. The members present at the meeting the day after the concert proposed to pay HCRR's debts by first reimbursing the Respondents the money they advanced at the eleventh hour to pay the bands. Next, local creditors would be paid. Finally, the Bank loan would be paid. Lynes were present at this meeting and did not object to the plan.

¶11　Later, Tuss, as president of HCRR, sent all of its members a letter requesting an additional investment of $7,500 from each of them. After receiving some additional investments, HCRR was able to pay its debts, except for $18,000 of the Bank loan.

¶12　HCRR's note to the Bank went into default. The Bank threatened to foreclose on the assets Lynes had pledged to secure the loan. So, Lynes, who had by then re-taken charge of HCRR's affairs, executed a new promissory note to the Bank in the approximate amount of $26,000, with HCRR as the debtor. The record does not reflect why the amount was increased from $18,000 to $26,000. Lynes also secured payment of this new note with a pledge of their personal assets.

4

¶13 Lynes sent a letter to all of HCRR's members stating that the outstanding Bank loan needed to be paid by April 10, 2003. HCRR did not receive additional money from its members and the loan again went into default.

¶14 The Bank brought suit against HCRR and Lynes to recover the $26,000 it loaned to HCRR, and to foreclose on Lynes' property that secured the loan. Lynes and HCRR then filed a third-party complaint against Respondents, alleging that during the time that they were the managers of HCRR, they wrongfully caused it to pay to themselves the amount they had advanced just before the concert and that both HCRR and Lynes were damaged in that amount. Ultimately, Lynes personally paid the loan and the Bank dismissed its complaint. Lynes' and HCRR's third-party complaint against Respondents continued in litigation, and it is the dismissal of that third-party complaint that is the subject of this appeal.

¶15 Respondents moved for summary judgment, averring that as a matter of law they were not obligated to re-pay the amounts HCRR reimbursed them, and that they were not personally liable for HCRR's debt to the Bank. The District Court granted Respondents' motion.

STANDARDS OF REVIEW

¶16 We review *de novo* a district court's grant of summary judgment using the standard established by M. R. Civ. P. 56. The moving party must establish the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Gliko v. Permann*, 2006 MT 30, ¶ 12, 331 Mont. 112, ¶ 12, 130 P.3d 155, ¶ 12. Once a moving party has met its burden, the opposing party must present substantial evidence essential to

5

one or more elements of its case in order to raise a genuine issue of material fact. *Gliko*, ¶ 12. We review a district court's conclusions of law to determine whether they are correct. *Gliko*, ¶ 13.

¶17 We review a district court's order granting or denying motions to compel for abuse of discretion. *Citizen Advocates v. City Council*, 2006 MT 47, ¶ 37, 331 Mont. 269, ¶ 37, 130 P.3d 1259, ¶ 37.

¶18 We will not disturb a district court's decision to grant or deny an extension of time absent a manifest abuse of discretion. *Easton v. Cowie*, 247 Mont. 181, 183, 805 P.2d 573, 574 (1991).

## ISSUE ONE

¶19 Did the District Court err in granting Respondents' motion for summary judgment based on the record before it?

¶20 Lynes first assert that the District Court erred in granting Respondents' motion for summary judgment because the Respondents, as members and managers of HCRR, caused it to re-pay to themselves the money they advanced on the day of the concert. Lynes and HCRR claim that such re-payment constituted an unlawful distribution of capital contributions to members, which depleted HCRR's assets to the point that it could not pay its debts. Thus, they argue Respondents are personally liable to HCRR for the amounts they caused it to pay to themselves.

¶21 Section 35-8-604(1)(a), MCA, provides that an LLC may not make distributions to its members if such distributions render the LLC unable to pay its debts. A distribution is defined in § 35-8-102(8), MCA, as a transfer of money, property, or other benefit to a

member in that member's capacity as a member of the company. The official comments to the Uniform Limited Liability Act, upon which Montana's act is based, explain that distributions include payments made to members which constitute a repayment of the capital contributions a member made to the company. Official Comments, Uniform Limited Liability Act, Section 1202. It is not disputed that HCRR could not pay its debt to the Bank after re-paying Respondents. Thus, if the money Respondents paid to HCRR constituted capital contributions, the repayments to Respondents which rendered HCRR insolvent may be considered prohibited distributions. Section 35-8-605(1), MCA, provides that a member or manager of an LLC who votes for or assents to a distribution in violation of § 35-8-604 is personally liable to the company for the amount of the distribution. Therefore, Lynes argue, the law requires Respondents to refund the amounts they received to HCRR. This refund would have the effect of infusing enough capital into HCRR to reimburse Lynes for the amount they personally paid to discharge HCRR's Bank loan.

¶22 To the contrary, Respondents assert that the repayment of the amounts they advanced HCRR to salvage the concert were loans they each personally made to HCRR, and the repayment of such loans was not contrary to law. We agree with Respondents.

¶23 Section 35-8-504(1), MCA, provides:

> **Member's and manager's rights to payments and reimbursement.** (1) A limited liability company shall reimburse a member or manager for payments made and indemnify a member or manager for liabilities incurred by the member or manager in the ordinary course of the business of the company or for the preservation of the company's business or property.
>     (2) A limited liability company shall reimburse a member for an advance to the company beyond the amount of contribution that the

7

member agreed to make.

(3) A payment or advance made by a member that gives rise to an obligation of a limited liability company under subsection (1) or (2) constitutes a loan to the company upon which interest accrues from the date of the payment or advance.

(4) A member is not entitled to remuneration for services performed for a limited liability company except for reasonable compensation for services rendered in winding up the business of the company.

¶24 The uncontested facts on the record clearly show that the Respondents advanced money to HCRR on the morning of the concert in the ordinary course of the company's business. These payments were indisputably for the benefit of HCRR. There is also no dispute that Respondents advanced the money so that HCRR's concert business could be preserved. The advances made by Respondents also had the effect of enabling HCRR to earn additional income from ticket and concession sales. Incidentally, these advances also had the effect of protecting Edward Lynes from personal liability on at least one contract with a band that he had personally guaranteed. Thus, based on the record before the District Court, these advances were loans to HCRR. Section 35-8-504, MCA.

¶25 It is true that Respondents were acting in managerial roles at the time they authorized HCRR to make the payments in question. Section 35-8-310, MCA. However, even in a managerial position, a member "may lend money to and transact other business with the company." Section 35-8-310(6), MCA. Section 35-8-504(1), MCA, provides that an LLC must reimburse members for money loaned to the LLC. HCRR had both the obligation and the right to pay the Respondents.

¶26 Lynes and HCRR also claim that the record establishes a material issue of fact concerning whether Respondents breached their duty of loyalty to HCRR and acted as

8

persons who had an interest adverse to the company when they repaid themselves before paying HCRR's loan to the Bank. Section 35-8-310, MCA, provides in pertinent part:

> (1) The only fiduciary duties that a member owes to a member-managed company and the other members are the duty of loyalty imposed by subsection (2) and the duty of care imposed by subsection (3).
> (2) A member's duty of loyalty to a member-managed company and its other members is limited to the following:
>
> . . . .
>
> (b) to refrain from dealing with the company in the conduct or winding up of the company's business on behalf of a party or as a person having an interest adverse to the company[.]

¶27    The uncontested facts show that HCRR had more legitimate debt than it could pay. As Lynes acknowledge in their brief, Respondents' decision on which debts should be paid first was simply a business decision. A debtor may pay one creditor in preference to another. Section 31-2-104, MCA. Under the present circumstances, Respondents did not breach their duty of loyalty to HCRR by paying themselves first.

ISSUE TWO

¶28    Did the District Court err in not granting Lynes' motion to compel discovery?

¶29    Lynes argue the District Court abused its discretion by failing to rule on their motion to compel discovery. They claim that if they had received the discovery requested, they would have had enough information to raise a material issue of fact precluding summary judgment.

¶30    The record indicates that on February 24, 2005, Lynes, proceeding *pro se*, served discovery requests on Respondents. On April 21, 2005, Lynes filed a motion to compel discovery stating that the responses to their discovery requests were incomplete, and

9

asked to postpone the trial. Lynes attached to their motion to compel a copy of the discovery requests. Respondents' counsel filed a notice that he had served responses to Lynes' discovery on April 21, 2005. On April 28, 2005, Lynes moved to vacate the trial that was then scheduled for June 29, 2005, again stating that Respondents' discovery responses were incomplete. On May 2, 2005, Respondents supplemented their discovery responses.

¶31   The District Court minutes show that a hearing on all pending motions was held on May 6, 2005. At this hearing, Lynes continued to complain that their discovery requests had not been adequately answered. Counsel for Respondents advised the District Court that he did not know how his clients' discovery responses were deficient. There is no indication in the record just what information or documents Lynes had requested that Respondents had not provided. On May 9, 2005, the District Court entered a written order stating that Lynes must, by May 25, 2005, list the discovery questions and answers they were not satisfied with so that Respondents would know what it was that they desired. Lynes did not comply with the District Court's order. We note that the discovery requests Lynes had served did not ask for the HCRR tax information described in ¶ 34 below, which they now claim would raise an issue of material fact.

¶32   As Lynes did not comply with the District Court's order to state how Respondents' discovery answers were deficient, and because the District Court actually considered and entered an appropriate order on Lynes' motion to compel discovery, we conclude that the District Court did not abuse its discretion by not granting Lynes' motion to compel. *See Citizen Advocates*, ¶ 37 (concluding that a district court did not

10

abuse its discretion in determining that a motion to compel was too vague and lacked specificity needed to rule upon it.)

## ISSUE THREE

¶33 Did the District Court err in not granting Lynes' motion for additional time to file further affidavits and documents in opposition to the Respondents' motion for summary judgment?

¶34 Finally, Lynes and HCRR argue that the District Court erred in not giving them more time to respond to Respondents' summary judgment motion. They claim that the 2002 United States partnership tax return filed by HCRR, which was rejected by the District Court as untimely, shows that the advances Respondents made to salvage the concert were treated by HCRR as capital contributions, not loans. Lynes and HCRR thus claim that these records establish that the reimbursement payments to Respondents were distributions. They argue that this information is sufficient to raise a material issue of fact and the District Court erred when it refused to consider it because it was not timely filed.

¶35 Lynes and HCRR filed their third-party complaint with the assistance of counsel on November 13, 2003. Respondents answered. At a scheduling conference on February 4, 2004, the District Court set a deadline for the close of discovery on May 25, 2004, and a trial date of August 25, 2004. Approximately eight months later, and a month before the trial date, on July 21, 2004, counsel for Lynes, with their consent, moved to withdraw. Counsel requested that the District Court vacate the scheduling order so that

11

Lynes could obtain new counsel. Two days later the District Court granted the motion and vacated the discovery deadline, the scheduling conference and the trial.

¶36 As required by Uniform District Court Rule 10, Lynes were given notice that they were required to retain new counsel or proceed in the litigation *pro se*, on September 13, 2004. On October 8, 2004, Lynes requested that they have an additional 30 days to retain counsel. They said they had contacted an attorney who was considering appearing on their behalf. The District Court granted Lynes' request and re-set the scheduling conference for November 16, 2004. This scheduling conference was vacated when Lynes came without counsel. The District Court set another scheduling conference for December 9, 2004. Lynes again appeared at the scheduling conference without counsel. The District Court, realizing that this litigation had to proceed whether or not Lynes obtained counsel, set a trial to begin over six months later, on June 29, 2005.

¶37 On April 25, 2005, Respondents moved for summary judgment, and filed a brief in support.

¶38 On April 28, 2005, Lynes moved to vacate the trial scheduled for June 29, 2005, stating that Respondents' discovery responses were incomplete and that they were still trying to retain counsel.

¶39 As noted above, the District Court held a hearing on all pending motions on May 6, 2005. Lynes, still appearing *pro se*, again stated that they were seeking counsel and had contacted another lawyer in Great Falls. The presiding judge set the hearing on Respondents' motion for summary judgment for June 2, 2005, advised Lynes that their response to Respondents' motion for summary judgment was due on May 12, told them

to advise the attorney who they were dealing with of such fact, and that if they did not have an attorney that they must respond themselves.

¶40   The District Court's written order of May 9, 2005, confirmed the date by which Lynes' response to the summary judgment motion was due, as well as the date of the hearing on the motion.

¶41   On May 12, still proceeding *pro se*, Lynes filed their response to the Respondents' motion for summary judgment. The response and exhibits in support thereof did not contain the tax records of HCRR that they now claim would create a material issue of fact. Lynes appeared at the June 2, 2005, hearing on Respondents' summary judgment motion *pro se*. Respondents' counsel argued in favor of the motion. Lynes stated that they had found an attorney who could not be at the hearing and requested that it be postponed. The District Court denied the motion to continue stating that Lynes had since the previous fall to retain an attorney and Respondents had a right to have the case resolved. Lynes then presented their argument against the motion. At the conclusion of the hearing the District Court, *sua sponte*, granted Lynes ten more days to submit additional documents through the attorney they said they had retained. Lynes made no objection to the time limitation. That same day, again acting *sua sponte*, the District Court extended the time for filing additional documents by entering a written order giving the parties until June 20, 2005, to file additional arguments detailing specific, disputable facts which would preclude summary judgment.

¶42   On June 16, 2005, Lynes appeared through their present counsel by way of a petition for additional time to supplement their response to Respondents' summary

13

judgment motion, to vacate the trial date, and to move for summary judgment. Lynes' counsel also filed a memorandum opposing the summary judgment motion. HCRR's 2002 tax return was not mentioned in these filings.

¶43 Respondents objected to any additional delay, arguing that the record before the court clearly showed that there were no material facts in dispute and that they would be even more prejudiced by further delay. Respondents also replied to the written arguments made by Lynes in opposition to their motion for summary judgment.

¶44 On June 27, 2005, after the District Court's deadline for filing additional opposition to the motion for summary judgment had passed, Lynes and HCRR filed another brief in opposition to Respondents' motion for summary judgment, and a motion for summary judgment in their favor. In these motions, for the first time, Lynes and HCRR attempted to bring to the District Court's attention the tax records of HCRR which they claim show that the company's payments to Respondents, reimbursing them the money they had paid to salvage the concert, were unlawful distributions that rendered HCRR insolvent.

¶45 By order of July 27, 2005, the District Court denied Lynes' and HCRR's motion for additional time and stated it would consider all documents and information concerning Respondents' motion for summary judgment filed by June 20, 2005, but would not consider later filings concerning the motion. In denying the motion for additional time, the District Court recounted the history of delay by the Lynes, the admonishments they were given to proceed as ordered, and the prejudice to Respondents.

Subsequently, on August 18, 2005, the District Court entered its order granting Respondents' motion for summary judgment.

¶46 On appeal, Lynes offer no explanation of why the tax records they claim the District Court erred by not considering were not presented in a timely fashion. They only say that they discovered them, and that they did not come from Respondents. They do not represent that these records of HCRR were not continuously in their possession from the time they filed their third-party complaint in November of 2003 until revealed on June 27, 2005. We also note that the copies of the tax records of HCRR that were rejected by the District Court as untimely indicate only that HCRR filed a partnership return signed by an accountant, which listed Lynes, not Respondents, as the designated tax matters partner. We affirm the District Court's order denying consideration of these documents as untimely. Nevertheless, it is far from certain that they would be sufficient to raise a material issue of fact precluding summary judgment.

¶47 In this instance, the litigation on Lynes' third-party complaint took almost two years during which Lynes could have presented the tax records of HCRR they now claim would create an issue of material fact. We conclude that the District Court was correct in not letting the case languish. It set reasonable times for completion of discovery, heard motions as necessary, and fairly scheduled pre-trial proceedings. The District Court admonished Lynes that they must comply with court orders, and gave them latitude because they were proceeding *pro se*. In particular, the District Court advised Lynes that the Respondents' motion for summary judgment needed to be answered in a timely fashion, and then granted them more time after the hearing to further respond. The

15

District Court then extended the response time even further. Still, Lynes did not comply. Under these circumstances, we will not hold that the District Court manifestly abused its discretion by not considering documents and arguments submitted after the time allowed. *Easton*, 247 Mont. at 183, 805 P.2d at 574.

## CONCLUSION

¶48 The order of the District Court granting Respondents' motion for summary judgment is affirmed.

/S/ JOHN WARNER

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ JIM RICE