JUSTICE BAKER,
dissenting.
¶47 Although well-intentioned, the Court’s decision fosters a rule of state law with “disproportionate impact on arbitration agreements,” Concepcion, 131 S. Ct. at 1747, prohibited by federal law and controlling decisions of the U.S. Supreme Court. The Court also overlooks a key factor in our generally applicable analysis of contract unconscionability by failing to evaluate the specific language of the arbitration provision at issue. For these reasons, and because the District Court erred in its analysis of the Loan Agreement’s arbitration clause by considering the validity of the agreement as a whole, I dissent.
¶48 I begin with the full language of the arbitration provision at issue, which is omitted from the Court’s opinion. The Loan Agreement to which Kelker agreed provides:
Both parties agree that any claim, dispute, or controversy between us, any claim by either party against the other or the agents, services, or assigns of the other, including the validity of this agreement to arbitrate disputes as well as claims alleging fraud or misrepresentation shall be resolved by binding arbitration, t[1]] Any arbitration hearing, if one is held, will take place at a location near Customer’s residence and shall be conducted by a mutually agreed to and certified arbitrator. Customer’s arbitration fees will be waived in the event you cannot afford to pay them. This arbitration agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act 9. [sic] USC Section 1-18. Judgment upon the award may be entered by any party in court having jurisdiction. Notice: Without this arbitration agreement, both parties have the right to litigate disputes through the law courts but we have agreed instead to resolve disputes through binding arbitration.
¶49 The District Court’s decision recognized “a good argument” that the arbitration provision is enforceable, based upon Concepcion. The court noted that this Court had not addressed its historic concern with *266 arbitration provisions since Concepcion was decided and that there appeared to be some “tension” between our precedents and the U.S. Supreme Court’s directives. The District Court applied Montana law requiring that, in order for a contract of adhesion to be unenforceable, it must be “(1) not within [the challenging party’s] reasonable expectations or (2) within her reasonable expectations, but when considered in its context, proves unduly oppressive, unconscionable, or against public policy.” (citing Zigrang v. U.S. Bancorp Piper Jaffray, Inc., 2005 MT 282, ¶ 13, 329 Mont. 239, 123 P.3d 237). The District Court held that the Loan Agreement’s provision requiring arbitration “may well have been within Kelker’s reasonable expectations.” Considering the arbitration provision “in its context.” however, the court found the arbitration provision “unduly oppressive, unconscionable, and against public policy.” (Emphasis in original.) The “primary factor” in the court’s determination was the “extraordinarily exorbitant” interest rate of 780% that Kelker was charged under the Loan Agreement. In considering the context of the contract and its provisions, the District Court could not “stand by” and overlook what it viewed as a clearly oppressive term in the Agreement.
¶50 The District Court erred as a matter of law by considering the contract as a whole in determining the validity of the arbitration provision. As we recognized in Martz v. Beneficial Montana, Inc., 2006 MT 94, 332 Mont. 93, 135 P.3d 790, the U.S. Supreme Court has “made clear that arbitration, not court, is the proper forum for challenges to contracts as a whole where those contracts contain arbitration provisions.” Martz, ¶ 17 (quoting Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 447, 126 S. Ct. 1204, 1209-10 (2006)). Thus, it is the arbitration provision itself that must be examined to determine (1) whether it is within Kelker’s reasonable expectations and, if so, (2) whether it nonetheless is unduly oppressive, unconscionable, or against public policy.
¶51 While the Court does not adopt the District Court’s rationale, it invalidates the arbitration clause on the sole ground that it was outside Kelker’s reasonable expectations, professing to rely on “generally applicable contract law.” The Court reaches this conclusion based on the ten-factor test adopted in Kortum-Managhan.
¶52 Although the Court emphasizes repeatedly that Kortum-Managhan recognized the obligation to apply generally applicable contract law, it fails to mention two important aspects of our decision in that case. First, one of the principal bases for our holding that the arbitration agreement was not within Kortum-Managhan’s reasonable expectations was its inclusion in a “bill stuffer” long after she accepted *267 the credit card agreement. Kortum-Managhan was deemed to have accepted the terms of the arbitration agreement simply by continuing to use her credit card. Kortum-Managhan, ¶ 7. Here, Kelker acknowledges that in order to be eligible for the loan, she had to click “I Agree” to the terms and conditions of the Loan Agreement, which expressly included the agreement to arbitrate disputes. By clicking “I Agree,” she voluntarily engaged in an electronic transaction with Geneva-Roth subject to the same rules as the formation of any other contract. Sections 30-18-104(2) and -113(2), MCA;Kluver v. PPL Mont., LLC, 2012 MT 321, ¶ 23, 368 Mont. 101, 293 P.3d 817.
¶53 Outside the arbitration context, our generally applicable principles of contract law presume that “[ajbsent incapacity to contract, ignorance of the contents of a written contract is not a ground for relief from liability” under its provisions. Quinn v. Briggs, 172 Mont. 468, 476, 565 P.2d 297, 301 (1977); Gliko v. Permann, 2006 MT 30, ¶ 35, 331 Mont. 112, 130 P.3d 155 (noting that each party was presumed to have read the contract and “had a duty to understand the terms of the agreement”); First Sec. Bank v. Kyle Abel & Abel Enters., 2008 MT 161, ¶ 29, 343 Mont. 313, 184 P.3d 318 (“[i]t is well established in Montana that one who executes a written contract is presumed to know the contract’s contents”); Stowers v. Community Med. Ctr., Inc., 2007 MT 309, ¶ 12, 340 Mont. 116, 172 P.3d 1252 (plaintiffs failure to read the agreement before signing did not relieve him from its terms); Wiley v. Iverson, 1999 MT 214, ¶ 23, 295 Mont. 511, 985 P.2d 1176 (“[t]he duty to inquire prior to signing an antenuptial contract is consistent with the general rule [of contract law] in Montana”). Likewise, in contexts other than agreements to arbitrate, we have held that expectations contrary to clear terms of a contract are not objectively reasonable. Newbury v. State Farm Fire & Cas. Ins. Co., 2008 MT 156, ¶ 35, 343 Mont. 279, 184 P.3d 1021 (citing Mont. Petroleum Tank Release Compen. Bd. v. Crumleys, Inc., 2008 MT 2, ¶ 35, 341 Mont. 33, 174 P.3d 948).
¶54 Because an arbitration provision waives fundamental rights, however, we have applied a more stringent standard when faced with a consumer’s claim that she has not read or understood the arbitration clause in a contract. Woodruff v. Bretz, Inc., 2009 MT 329, ¶¶ 14-15, 353 Mont. 6, 218 P.3d 486; Kortum-Managhan, ¶ 26; Kloss v. Edward D. Jones & Co., 2002 MT 129, ¶ 28, 310 Mont. 123, 54 P.3d 1, see also ¶¶ 64-65 (Nelson, J., specially concurring). Kelker’s acceptance of the terms of the Loan Agreement are distinct from the “addition of completely new terms and conditions” through the “bill stuffer” used by Herbergers, Kortum-Managhan, ¶ 22, and her failure to read the *268 Agreement does not remove the arbitration provision from her reasonable expectations.
¶55 The second aspect of Kortum-Managhan’s ten-factor test the Court overlooks is that it expressly was to be used to determine “whether an individual deliberately, understandingly and intelligently waived their fundamental constitutional rights to trial by jury and access to the courts[.]” Kortum-Managhan, ¶ 27. The fact that arbitration clauses, “by their very nature,” waive the rights “to trial by jury, access to the courts, due process of law and equal protection of the laws” required application of the standards reserved for effective waiver of a constitutional right. The ten-factor test was derived from the fundamental nature of the rights given up by arbitration, thereby demanding proof that the waiver was made “voluntarily, knowingly and intelligently,” which in turn required “that a consumer must be informed of the consequences before personally consenting to the waiver.” Kortum-Managhan, ¶ 26. Since Kortum-Managhan was decided, we have applied its ten-factor test only to evaluate an arbitration clause. Woodruff, ¶ 15. Drawing from the Kortum-Managhan factors, the Court suggests that Kelker was compelled by “economic duress” to sign a contract that called for a 780% APR. Opinion, ¶ 31. The Court cites no generally applicable principle of contract law for this proposition and incorporates the District Court’s error of looking to unconscionability of the contract as a whole in evaluating the agreement to arbitrate.
¶56 It is not unreasonable that a State should impose more stringent standards for evaluating the waiver of fundamental constitutional rights. In doing so, however, we have created a state-law rule with “disproportionate impact on arbitration agreements,” Concepcion, 131 S. Ct. at 1747, which the U.S. Supreme Court has viewed as the “type of ‘judicial hostility towards arbitration’” that is expressly foreclosed by the FAA, Nitro-Lift, 133 S. Ct. at 503. Like it or not, we are bound by those rulings. U.S. Const. Art. VI, cl. 2.
¶57 Under generally applicable principles of contract law, our analysis of contracts of adhesion for unconscionability should include examining the challenged provision itself to determine whether it is “unreasonably favorable to the drafter,” “unduly oppressive, or against public policy.” Highway Specialties, ¶ 16; Summers, ¶¶ 22,24; Iwen v. U.S. W. Direct, 1999 MT 63, ¶ 31, 293 Mont. 512, 977 P.2d 989. The same section of Corbin on Contracts cited by the Court notes that “the purpose of the [unconscionability] doctrine is to prevent two evils: oppression and unfair surprise.” 7 J. Perillo, Corbin on Contracts, § 29.4 at 388 (emphasis in original). This echoes our statement in Kelly *269 where, citing the identical UCC Comment, we noted that the “principle is one of the prevention of oppression and unfair surprise.” Kelly, 236 Mont, at 527, 771 P.2d at 145 (citing to UCC § 2-302 cmt. 1). The Court’s opinion in this case lacks any such analysis.
¶58 The arbitration clause in the Loan Agreement, unlike that invalidated as unconscionable in Iwen, is not one-sided and does not unreasonably favor Geneva-Roth. It provides for mutual consent to an arbitrator, proceedings near the consumer’s home, and waiver of fees if the consumer cannot afford them. Unlike Iwen, it does not grant only the party with superior bargaining power the right to go to court. Given the FAA’s “national policy favoring arbitration,” Nitro-Lift, 133 S. Ct. at 503 (quoting Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S. Ct. 852, 858 (1984)), the provision cannot be said to violate public policy. Analyzed in light of cases outside the arbitration context, such as Highway Specialties, Summers, and Kelly, it is difficult to determine how this provision is unconscionable, except that-like any arbitration agreement-it waives Kelker’s right to a jury trial and access to the courts.
¶59 In short, removing Kortum-Managhan’s heightened standard of unconscionability from the analysis, the Loan Agreement’s arbitration provision would not be subject to invalidation under our generally applicable principles of contract law. “[T]he times in which consumer contracts were anything other than adhesive are long past.” Concepcion, 131 S. Ct. at 1750. Unfortunately, the fact that the Loan Agreement Kelker accepted is typical of such adhesive consumer Internet transactions does not make its arbitration provisions less worthy of enforcement than other contracts subject to the FAA. I would reverse the District Court’s denial of Geneva-Roth’s motion to compel arbitration and allow the arbitrator to determine whether the Loan Agreement’s 780% APR makes the contract as a whole unconscionable.
JUSTICE RICE joins in the dissenting Opinion of JUSTICE BAKER.

 The validity of the agreement to arbitrate is, as the Court observes (Opinion, ¶¶ 11-12), a matter for the court to decide. Geneva-Roth does not contest this point.